INDIANAPOLIS LIFE INSURANCE COMPANY *v*. LUNDQUIST.

[No. 27,964. Filed March 8, 1944. Rehearing denied April 3, 1944.]

*James A. Ross, Ross, McCord, Ice & Miller,* all of Indianapolis, for appellant.

*Henry B. Krug,* of Indianapolis, for appellee.

FANSLER, C. J.—The appellee brought suit against the appellant on a life insurance policy. Issues were joined, there was a trial, and, more than a year after the trial, a judgment for appellee. The defendant filed a motion for a new trial, which was overruled, and thirty days were given to file a bill of exceptions containing the evidence. An appeal was prayed and bond approved. When the appellant sought to procure a bill of exceptions, it was learned that the reporter's notes and all exhibits had disappeared and could not be located. The trial judge was advised of the situation, and informed counsel that he would set aside his ruling on the motion for a new trial in order that further opportunity might be had to locate the stenographer's notes and exhibits, or a bill of exceptions otherwise prepared. On the last day of the term, the judge, in open court, in the presence of counsel for both parties, announced that the ruling on the motion for a new trial was vacated and set aside, and directed the clerk to prepare an order to that effect. Afterward, in the presence of counsel for appellee, but in the absence of

counsel for appellant, the judge told the clerk not to enter the order previously announced setting aside the ruling on the motion for a new trial. Counsel for the appellant was never informed of this latter action. Afterward, and when the time for filing a bill of exceptions had expired in the then state of the record, counsel for appellant discovered that the order setting aside the ruling on the motion for a new trial had not been entered. He conferred with the trial judge, whose term of office had expired, and was advised to get in touch with the deputy clerk regarding the entry. He got in touch with the clerk, who wrote up and entered the order announced by the court from the bench in the order book. When counsel for appellee discovered that the entry had been made he immediately filed a motion on behalf of appellee to expunge the entry. In response to this motion the appellant filed a petition seeking, first, that the motion to expunge the order book entry be denied, or, second, in the alternative, "that a new trial of this cause be awarded defendant under such circumstances that its right of appeal will be protected and safeguarded." Issues were made on the respective petitions of the parties. There was a trial, the entry of the order made by the clerk above referred to was ordered expunged from the record, and there was a finding against the appellant on its petition for equitable relief. The appellant filed a motion for a new trial, which was overruled, and the error assigned here is upon the overruling of appellant's motion for a new trial on its petition for equitable relief.

The petition alleges that the plaintiff's action was based upon a contract of insurance; that at the trial the evidence disclosed that the policy of insurance was never delivered to the insured and the first premium never paid, and that by the terms of the agreement

between the parties the contract was not to be effective
unless and until the policy of insurance was delivered
and the first premium actually paid. The petition also
alleges that the defendant relied upon the order of the
court setting aside its ruling upon the motion for a
new trial, and awaited further disposition of the cause,
and that if the court had not ordered its ruling set
aside "the defendant could and would have tendered a
bill of exceptions containing the evidence in this cause,
regardless of the loss of said Exhibits and said note-
books."

There is very little conflict in the evidence. The
facts disclosed are in the main those above recited.
The court reporter, who was not the regular reporter,
but one called from another court, testified that she
had made search for her shorthand notes and the
exhibits and that they were nowhere to be found. One
of appellant's attorneys testified that he called upon the
judge and advised him that the shorthand notes of the
evidence and the exhibits were lost, and asked him to
set aside the ruling on the motion for a new trial so
as to give, additional time, which the judge agreed to
do. The attorney for the plaintiff was called in, and,
in the presence of both attorneys, the judge announced
his decision to set aside his ruling, and called the clerk
and directed him to enter such an order. The judge
and the attorney for the plaintiff testified that the
judge told the clerk that on the following Monday,
which was the first day of the next term of court, he
was to "reinstate the same ruling." But it is agreed
by all that the judge announced his decision to set aside
his order, and directed the clerk to make the record
accordingly. The appellant's attorney testified that the
clerk made an entry on his minute pad at the time. The
appellant's attorney then left, and the attorney for the

appellee testified that he told the judge that he had no jurisdiction to set aside his order, and that the judge thereupon told the clerk not to make the entry. The following week the plaintiff's attorney told the judge that he had examined the record, and that no record of the court's order setting aside his ruling on the motion for a new trial had been made, and the judge replied, "Well, then you won't have to worry about what I did then, because nothing has been done." .

The appellant's attorney did not discover that no order had been entered until the 2nd of January, 1943. This was within the time in which the bill of exceptions might have been filed if the order overruling the motion for a new trial had been reinstated upon the following Monday. Appellant's attorney immediately called the judge, who said that it was the clerk's responsibility, and that he had to have a record some place. The appellant's attorney then communicated with the deputy clerk, who was no longer employed in the clerk's office. The deputy clerk came to the courthouse and made up the order from a memorandum which appellant's attorney had written out and used in dictating the order to the deputy clerk at the time the ruling on the motion for a new trial was set aside. There is a memorandum on the clerk's minutes, dated December 5, 1942, the date upon which the court set aside the ruling on the motion for a new trial, in the deputy clerk's handwriting. The clerk testified that he had no recollection as to when this notation was made. The appellee's attorney said that he examined the record frequently and saw no such notation during the month of December. The appellant's attorney testified that at the time the ruling was announced he dictated the memorandum; that he saw the clerk write the number of the case on the clerk's minutes, but did not

see what the clerk wrote, but that he wrote something at the time.

It was agreed by the judge and the attorneys for both parties that the judge made and announced his decision and order vacating the order overruling the motion for a new trial. Concerning this fact there is no controversy. Mr. Freeman says: ". . . if any judgment or decree of any court, whether of record or not of record, whether subordinate or appellate, fails to be entered upon its records, the failure is attributable to the negligence or inadvertence of its officers, and not to the countenance and support of the law, and does not defeat the judgment." Freeman on Judgments (5th Ed.), Vol. 1, § 49, p. 83. Mr. Freeman also says: "The policy of entering judgments and decrees nunc pro tunc is agreeable to the maxim, Actus curiae neminem gravabit: an act of the court shall prejudice no one. This maxim, says Mr. Broom, 'is founded in justice and good sense; and affords a safe and certain guide to the administration of the law.' As an expression of the principle upon which judgments are given effect, as of some time prior to their actual entry, the maxim, in the interests of accuracy, requires to be changed to 'a delay of the court shall prejudice no one.' The power of making an entry nunc pro tunc seems to have been possessed and exercised by courts of law and of equity from earliest times." Freeman, *supra*, § 121, p. 220. It is well settled that courts have inherent power, independent of statute, to make corrections and supply omissions in their records. *Chissom et al.* v. *Barbour et al.* (1885), 100 Ind. 1. The greatest difficulty in respect to the entry of orders *nunc pro tunc* involves the question of the character of evidence upon which the order will be made. The common-law rule, which has been followed in this State,

requires that some entry or memorandum on or about the records of the court that rendered the judgment is necessary. Some of the modern decisions differ from this view and hold that evidence sufficient to satisfy the court that the judgment ·was rendered or order made is sufficient. See Freeman, *supra*, § 127, p. 235; 30 Am. Jur. § 118, p. 881·; 34 C. J. § 221, p. 79. But all of the cases, or the modern ones at least, involve a controversy as to whether the judgment was in fact given or the order made, and the strict rule of evidence is upon the theory that entries of things done in the past should not be made except upon the ·clearest proof. But here the reason for the rule fails. There is no controversy. The judge and all of the parties agree upon the announcement of the decision and order of the court and its terms. What is admitted by all of the parties in interest needs no proof. Since the essential facts are admitted, the entry should be made *nunc pro tunc*. It is unimportant whether the entry made by the clerk shall stand or whether it be set aside, because it could only be made upon motion, and an identical order be now made. Both the judge and the plaintiff's attorney testified that at the time the order was made setting aside the ruling on the motion for a new trial, the clerk was told to reinstate the same ruling upon the following Monday. The judge had announced that he would again make an order overruling the motion for a new trial on the next Monday, the first day of the succeeding term, and the direction to the clerk was made accordingly. But this was not a decision of the court. It was merely an announcement of an intention to make a decision on the following Monday, and unless and until that decision was made on the following Monday, there could not properly be an entry of an order recording such a decision.

The appellee contends that the court had lost jurisdiction to vacate the order in question because an appeal had been prayed and an appeal bond approved. There is no merit in this contention. The trial court had jurisdiction over its records during the term unless an appeal had been perfected by filing an assignment of errors and transcript in the Appellate Court.

In *Hitt et al.* v. *Carr et al.* (1922), 77 Ind. App. 488, 501, 502, 130 N. E. 1, 6, it is said: "It is well settled that courts of general jurisdiction possess inherent powers not created or conferred by legislative enactment. . . . The Supreme Court of this state has recognized the existence of such powers, and has held that whenever, by fraud, accident, mistake or otherwise, an unfair advantage has been obtained in a proceeding at law, and it is against conscience to make use of such advantage, a court of equity will restrain the party from making use of the same; and after judgment, any facts which prove it to be against conscience to execute such judgment, and of which the injured party could not avail himself in defense of the suit, will authorize the court to interfere by injunction, and restrain the party from enforcing the judgment." A petition to transfer the case was denied, and the opinion was referred to, and the principle announced approved, in *Globe Mining Co.* v. *Oak Ridge Coal Co.* (1932), 204 Ind. 11, 177 N. E. 868. In one of the early cases in this court, *Deputy* v. *Tobias* (1824), 1 Blackf. 311, it was held that a bill in chancery would lie for a new trial in an action at law. In *Globe Mining Co.* v. *Oak Ridge Coal Co., supra,* the following is quoted from *Hitt et al.* v. *Carr et al., supra* (p. 16 of 204 Ind., p. 869 of 177 N. E.) : " 'Where one litigant has obtained an unfair advantage over his adversary through fraud, inadvertence, surprise, acci-

dent, mistake or otherwise, and it would be against conscience to permit him to retain it, the court will grant relief.'" It is pointed out in the opinion that by denying a petition to transfer in *Globe Mining Co.* v. *Oak Ridge Coal Co.* (1922), 79 Ind. App. 76, 134 N. E. 508, this court had approved the holding that the statute providing for relief against judgments did not apply, and the opinion continues: ". . . but as we are presently advised we believe that appellant was entitled to relief either under the statute or under the general principle of equity stated by the Appellate Court." In the *Globe Mining Co.* case it appeared that the principal cause had been tried by the court and was taken under advisement, with an understanding had in open court that when the decision was announced the attorneys would be called into court. Thereafter, on the last day of the term of court, judgment was rendered in the absence of the appellant's attorneys and without knowledge on their part that any action had been taken, and appellant's attorneys did not learn of the action until it was too late to file a motion for a new trial, and to perfect an appeal if the motion for a new trial should be overruled. The proceeding for relief was by motion, and not by an original action. The Appellate Court said (pp. 79, 80 of 79 Ind. App., p. 509 of 134 N. E.): "While it appears that appellant filed its application under the title of the cause in which the original judgment was rendered, it was in fact an independent proceeding and will be so treated, since it was begun after the close of the term in which said judgment was rendered, although it would have been more formal had it been entitled and docketed as a separate action. *Brumbaugh* v. *Stockman* (1882), 83 Ind. 583; *Indiana, etc., Assn.* v. *Doherty* (1919), 70

Ind. App. 214, 123 N. E. 242. Cases may be found where such liberality in construction has not been indulged, because of the attending facts and circumstances, as illustrated by *Stampfer* v. *Peter Hand, etc., Co.* (1917), 67 Ind. App. 485, 118 N. E. 138. But, wherever justice appears to demand it, courts should look through the form of a pleading to its substance, and thereby make it effective for the purpose intended, where this can be done without violating any statute or settled rule of practice. For this reason such cases are not necessarily controlling precedents."

In the cases referred to it was recognized that courts of general jurisdiction in this State have power to enjoin the enforcement of a judgment, to order a judgment vacated to permit the filing of a motion for a new trial, and to order a new trial in an action at law. Numerous cases involving the power of courts of equity to grant a new trial because of inability to perfect a record for appeal are collected in the following case notes: 13 A. L. R. 102, 16 A. L. R. 1158, and 10 A. L. R. 603. In *Curran* v. *Wilcox* (1880), 10 Neb. 449, 6 N. W. 762, it was held that where the statute required the official court reporter to prepare a transcript of the evidence, the parties had a right to rely on his performing that duty, and if he failed and the unsuccessful party was thus deprived of a record for appeal without fault on his part he was entitled to a new trial. This is consistent with the doctrine expressed in the case of *Hitt et al.* v. *Carr et al.*, *supra*, in which the clerk of the court failed in his duty to preserve a record. In the cases annotated there seems to be a conflict as to the power to grant a new trial. An examination of the cases discloses that most of those which deny the right to a new trial base their decision upon facts which fail to disclose diligence or

that it was impossible to otherwise procure a proper record. Some are based upon constitutional or statutory restrictions. Among the cases cited as denying the right is *Amacher et al.* v. *Johnson* (1910), 174 Ind. 249, 91 N. E. 928. It appeared in that case that on account of the incapacity of the court reporter he was unable to prepare a transcript of the evidence given at the trial, and that by reason of the fact that the evidence was not available the unsuccessful party was prevented from obtaining a new trial or perfecting an appeal to the Supreme Court. The court below granted relief, but the judgment was reversed for the reason that (p. 253 of 174 Ind., p. 929 of 91 N. E.) : "The Constitution of the State does not grant to any one the right either to a new trial or to an appeal to this court or any other court. Such a right depends upon the provisions of the statutes, and a new trial can be granted or an appeal taken only when authorized by statute, and then only in the manner, upon the conditions, and for the reasons named in the statute." It is unnecessary now to investigate the authorities cited to support the doctrine announced in the quotation. It is sufficient to say that by subsequent decision this court is clearly committed to the doctrine that courts have jurisdiction to grant new trials beyond the statute (see cases, *supra*), and that the right to an appeal does not depend upon a statute. *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. (2d) 399. In *State ex rel. White* v. *Hilgemann, Judge* (1941), 218 Ind. 572, 575, 34 N. E. (2d) 129, 130, the court said: "In *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. (2d) 399, it was concluded, upon a careful consideration of the authorities, that the Constitution of Indiana guarantees an absolute right to a review by this court; that the Legislature has the right to regulate and pro-

vide procedure for obtaining a review, but not to curtail or deny the right." Article 1 of Secttion 12 of the Constitution of Indiana provides: "All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." In a case similar in the facts to the case at bar, the Supreme Court of Nebraska said, in *Zweibel* v. *Caldwell et al.* (1904), 72 Neb. 47, 52, 99 N. W. 843, 845: "Section 13, article 1, of the constitution, providing that the court shall be open to every person for any injury done, and that he shall have a remedy, has been held to be broader than the common law, and to entitle the courts to grant a remedy whenever a wrong has been done." It was held that a showing of the loss of the right to an appeal is sufficient to warrant a new trial, and that prejudice will be presumed without the necessity of showing error in the judgment complained of. See, also, *Bruegger* v. *Cartier* (1910), 20 N. D. 72, 126 N. W. 491.

The case of *Amacher et al.* v. *Johnson, supra,* in so far as it is inconsistent herewith, is overruled.

In the *Globe Mining Co.* case, *supra,* it was held that the trial court, in the exercise of its equity powers, had jurisdiction after the term to vacate its judgment in order to permit the filing of a motion for a new trial. We have concluded that there is a sufficient basis for a *nunc pro tunc* entry showing the court's order vacating its ruling on the motion for a new trial. But it seems clear upon authority of the case last referred to that in the absence of a *nunc pro tunc* order the court's equity powers were sufficient under the circumstances to permit the vacation of the order.

Official court reporters are an arm of the court, charged with the duty of preserving a record of the

evidence, and transcribing and certifying the record for use as a bill of exceptions, and it has long been the practice to rely upon the availability of such a record. Where the sufficiency of the evidence is in question, this record is as important as the record kept and certified by the clerk. A failure to make this record available is a failure of the court which entitles the appellant to equitable relief.

It is clear that in granting relief to one who has been deprived of a right by judgment, the decree should go no further than is necessary to correct the wrong. The appellant, in its petition below, asserted that if the order denying its motion for a new trial had been set aside it would have filed a bill of exceptions, notwithstanding the loss of the reporter's notes and the exhibits. But in oral argument both parties agreed that the notes and the exhibits are lost beyond recovery, and that it will be impossible to procure a bill of exceptions without them. If this is true, the injury to the appellant cannot be righted without a new trial, which was sought as an alternative remedy. So much time has passed since the trial that it seems unlikely that a bill of exceptions can now be procured without the shorthand notes and exhibits except by agreement of the parties. If a bill of exceptions is agreed upon the rights of appellant will be protected by vacating the order overruling the motion for a new trial and granting sufficient time to file the agreed bill of exceptions and have it approved. If there is no agreement on the bill of exceptions, the only remedy is a new trial. This will be an inconvenience to the plaintiff and an equal inconvenience to the defendant, but where the defendant has been deprived of a substantial right to question the legality of a substantial judgment, through no fault of his own, but through

the misprision of an officer of the court, the mere convenience of the plaintiff will not require that the defendant be denied a remedy.

The judgment is reversed, with instructions to deny appellee's motion to expunge the order setting aside the ruling on the motion for a new trial from the record; and to grant the appellant reasonable time to submit a bill of exceptions made up from the reporter's notes and the exhibits if they are available, or, if not, to submit a bill of exceptions agreed upon by the parties; and if a suitable bill of exceptions is not available by either method, to grant a new trial.

NOTE.—Reported in 53 N. E. (2d) 338.