**Roger DAVIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 52A02–0108–CR–538.**

Court of Appeals of Indiana.

Aug. 5, 2002.

Susan K. Carpenter, Public Defender of Indiana, Lorraine L. Rodts, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Roger B. Davis (Davis), appeals his conviction for burglary, a Class B felony, Ind.Code § 35–43–2–

1. Davis also appeals the trial court's restitution order.

We affirm.

### ISSUES

Davis raises two (2) issues on appeal, which we restate as follows:

1. Whether the trial court improperly limited his cross-examination of two (2) witnesses.

2. Whether the trial court erred in ordering him to pay restitution for lost wages in the amount of $1,000.00 to the victim.

### FACTS AND PROCEDURAL HISTORY

On July 28, 1995, Lester Miller (Miller) noticed a red car slow down near his home in Miami County, Indiana, as he picked sweet corn in his field. By the time he gathered the sweet corn, Miller saw the same red car drive by his home again. Shortly thereafter, Miller was in his car on the way to a neighbor's house when the red car passed him going the opposite direction. He only saw one (1) person in the car. As he looked in his rearview mirror, he saw someone running out of the woods. At this point, Miller turned his car around and drove toward the red car. The red car stopped to pick up the person who came out of the woods. Miller spoke to the person who came out of the woods, and testified:

> I asked him if they had a problem you know cause they was out there in that neighborhood. You see somebody that has trouble you try to help out so that's why I stopped. And they said that uh . . ., his brother was out coon hunting and they were out looking for him.

(Appellant's App. p. 338). Miller identified Davis as one (1) of the individuals that he saw alongside the road.

Minutes later, Jack Kling (Jack) arrived home with his wife, Stella Kling (Stella). Before Jack pulled into his driveway, he saw Miller. Miller told Jack about the two (2) men and the red car. Subsequently, Jack noticed that the back door to his house was open. He testified, "I know for a fact that it was shut when I left and it was locked." (Appellant's App. p. 303). Jack then called the sheriff's department to report that someone had broken into his house. As Stella watched for the police, Jack drove around the block to look for the red car. When Jack came back to his house, Stella saw the red car and alerted him. Jack then took off after the red car. A chase ensued; however, Jack eventually lost sight of the red car. Jack could see that there were two (2) people in the red car.

As Jack chased after the red car, he was on his cellular phone with the sheriff's department, explaining his route. Even though Jack lost sight of the red car, Officer Gary Glassburn (Glassburn) of the Miami County Sheriff's Department attempted to intercept the chase route. Glassburn was unable to intercept the red car; however, at some point in his search, he came across Davis, who was walking alongside a county road. Davis told Glassburn that he was walking home from a friend's house in Wabash and became disoriented and lost. Davis denied knowing anything about a red car or criminal activity to Glassburn.

On September 9, 1998, the State filed an information against Davis, charging him with two (2) counts of burglary. Count 1 involved the Kling burglary. Count 2 involved an unrelated burglary. On February 8, 2000, the trial court granted Davis' motion to sever the offenses. On February 8-9, 2000, a jury trial was held on Count 1. The jury was unable to reach a verdict. Thus, the trial court declared a mistrial and reset the cause for trial on April 10, 2000. On April 10, 2000, Davis' second trial on Count 1 was declared a mistrial due to a bomb threat that caused the courthouse to be evacuated.

On May 21-22, 2001, a jury trial was held on Count 1. At trial, Jason Autry (Autry) and James Walsh (Walsh), Davis' accomplices in the Kling burglary, testified against Davis pursuant to plea agreements. Both men testified that Davis took part in the Kling burglary. Autry and Walsh testified that Davis drove around in a red car while they broke into the Klings' home; Davis picked up Walsh when the burglary was complete. Autry testified that after Davis and Walsh drove away, he "went down the creek a little ways, stayed up on the bank for a while til it got dark, cut through a bean field, knocked on a lady's door and asked her if I could use the phone." (Appellant's App. p. 385). Eventually, someone picked up Autry from the woman's home.

On May 22, 2001, the jury found Davis guilty of burglary. On June 20, 2001, a sentencing hearing was held. At the hearing, the State requested restitution, stating as follows:

I would urge the Court to impose a fine of $10,000 and suspend that fine on condition that he be ordered to pay restitution to [Jack] in the amount of $1500.00. $500 was for his deductible on the insurance and $1000 of lost wages and that judgment be entered in favor of [Jack] for [inaudible] code 35-55-1 and following and also recommend that the Court likewise impose that fine of $10,000 and suspend that on condition that he also pay to the Illinois Farmer's Insurance Company the sum of $2901.94 and that judgment again n[sic] be entered pursuant to the same statute in their favor. And uh ..., would ask the Court to order periodic payments to where that

can be monitored. Appear that [Davis] says he has the ability to pay I think he should be ordered to pay.

(Appellant's App. p. 527). The trial court sentenced Davis to the Indiana Department of Correction for a period of ten (10) years, with five (5) years suspended and placed on probation. Additionally, Davis was ordered to pay restitution, $2,901.94 to Illinois Farmer's Insurance Company, and $1,500.00 to Jack.

Davis now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION
### I. *Exclusion of Evidence*

■ Davis argues that the trial court improperly limited his cross examination of Autry and Walsh. At trial, the following exchange took place between Davis' counsel and Autry:

Q At the time that you were approached about making a deal on your sentencing, the deal was that you need to give them [Davis], is that right?

A A clean up statement, yeah.

Q And specifically mentioning [Davis], isn't that right?

A That's just who was there with me.

Q Well, now you . . ., while you were in jail, af . . ., after this date you communicated with [Walsh], isn't that right?

A Huh? After what day?

Q Back in May . . ., back in May of 1998 you were in contact with [Walsh] by correspondence isn't that right?

A Couple [of] time[s][,] yeah.

Q Okay. And in fact you wrote him about your deal, isn't that?

A Who Walsh?

Q Yeah.

A . No.

Q And you communicated with [Walsh] at some point in time.

A · It's more like he communicated with me.

Q Well you wrote him back.

A No.

Q You . . ., all right. Well let me ask you this, did you ever tell [Walsh] that you need to get your stories straight about [Davis]?

A No I never said that to him.

Q You go by any nicknames?

A Nope.

Q Does anyone call you J?

A No.

Q You ever sign any of your letters J?

A No.

BY MR. SIDERS [the State]: I don't think I've received this.

BY MR. SMITH [defense counsel]: No, well it's for [inaudible].

Q Show you what's marked Defense Exhibit A, that's . . ., have you seen that . . .

BY MR. SIDERS: Your Honor approach?

**[BENCH CONFERENCE]**

(Appellant's App. pp. 390–91) (emphasis supplied). After the bench conference, defense counsel did not attempt to question Autry about Defendant's Exhibit A, nor did defense counsel attempt to have Autry identify the exhibit.

Additionally, the following exchange took place between Davis' counsel and Walsh:

Q Okay and did you have communications with [Autry] during the time you were incarcerated?

A Yes I did.

Q And how, what kind of communications did you have with him?

A Through the mail. ·

Q And what was your, uh . . ., did you discuss the Kling case with him?

A   Not actually discuss it.

Q   Well in writing?

A   Yes he wrote me a letter concerning it one time.

Q   Okay when was that?

A   I don't recall.  I sent it to you.

Q   How many times did you correspond by letter with [Autry]?

A   I don't know about ... I don't recall, it was a lot.

Q   Would you be familiar with his handwriting if you received a letter from him?

A   Yes I would.

Q   Did he go by any nicknames?

A   Jay

Q   What was the substance of the communications that you had with him about the Kling burglary?

BY MR. SIDERS:  Your Honor we object.  This is hearsay.

A   I have ... I don't remember.

BY MR. SIDERS:  Your Honor I object to hearsay.

BY THE COURT:  Sustained.

BY MR. SIDERS:  Is this what you're hunting for?

BY THE COURT:  No I don't have it I think he took it back to the ...

BY MR. SMITH:  Show you what's been marked ...

BY MR. SIDERS:  Your Honor, object to hearsay.

BY THE COURT:  Approach.

**[BENCH CONFERENCE]**

BY MR. SIDERS:  Your Honor ask that the jury be admonished to disregard [inaudible]

BY THE COURT:  Well it hasn't been introduced.  They don't know the substance of it.  [Inaudible] of the Court is sustaining an objection to the introduction of the document Mr. Smith was offering.   Joyce.

Q   Did you write any letters to [Autry] regarding the Kling burglary?

A   Just to tell him that I won't lie.

(Appellant's App. pp. 417–18) (emphasis supplied).  Defense counsel thereafter did not attempt to question Walsh about Defendant's Exhibit A, nor did defense counsel attempt to have Walsh identify the exhibit.[1]

With the above in mind, Davis maintains that he was unable to effectively confront Autry and Walsh with proof of a vendetta against him.  Because Defendant's Exhibit A is part of the record on appeal, we know that the exhibit is a letter.  The letter is not addressed to anyone other than "Bro," and it is signed by "Jay." (Appellant's App. pp. 488–89).  The letter discusses getting their stories straight about Davis so they can "get his ass." (Appellant's App. p. 488).  While we are able to discern the substance of Defendant's Exhibit A, the trial court was not.  Consequently, we are unable to review this issue because Davis did not make an offer to prove, that is, "an 'offer' from counsel regarding what a witness would say if he was allowed to testify." *Bradford v. State*, 675 N.E.2d 296, 301 (Ind.1996), *reh'g denied.*  "The Rules of Evidence require that the substance of the evidence be made known to the trial court and that the offer to prove identify the grounds for admission and the relevance of the testimony." *Noble v. State*, 725 N.E.2d 842, 846 (Ind.2000).

Here, Davis' counsel made no offer of proof, and the context does not enable us to know whether Autry and/or Walsh would have been able to identify Defendant's Exhibit A.   Furthermore, Davis'

---

**1.**  While it was not stated what exhibit was being discussed, we presume that Davis' counsel was again attempting to introduce Defendant's Exhibit A.

counsel did not indicate to the trial court the substance of the exhibit. Thus, aside from implications in defense counsel's questions, the trial court was not apprised of what Autry and/or Davis would have testified to, had Defendant's Exhibit A been admitted into evidence. As such, the issue is waived. *Id.*

## II. *Restitution*

■ Next, Davis argues that the trial court erred in ordering him to pay Jack restitution in the amount of $1,000.00 for lost wages. Specifically, Davis argues that the record is devoid of any probative evidence that Jack suffered an actual loss of earnings as a consequence of his attendance in court. An order of restitution is a matter within the sound discretion of the trial court and will be reversed only upon a finding of abuse of discretion. *Ault v. State,* 705 N.E.2d 1078, 1082 (Ind.Ct.App. 1999). An abuse of discretion occurs if the court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Palmer v. State,* 704 N.E.2d 124, 127 (Ind.1999). Furthermore, our supreme court has determined that restitution may be paid to those shown to have suffered injury, harm, or loss as a direct and immediate result of the criminal acts of a defendant. *Vanness v. State,* 605 N.E.2d 777, 783 (Ind.Ct.App.1992), *trans. denied.*

Additionally, I.C. § 35–50–5–3 provides, in pertinent part, as follows:

(a) Except as provided in subsection (i), in addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation or without placing the person on probation, order the person to make restitution to the victim of the crime, the victim's estate, or the family of a victim who is deceased. The court shall base its restitution order upon a consideration of:

. . .

(3) earnings lost by the victim (before the date of sentencing) as a result of the crime including earnings lost while the victim was hospitalized or participating in the investigation or trial of the crime;

At Davis' sentencing hearing, Jack testified that everyday he was in court he lost $200.00. Moreover, Jack acknowledged that he had been in court for this matter, at least, four (4) or five (5) times. As a result of Jack's testimony and the State's request, Davis was ordered to pay Jack restitution in the amount of $1,000.00 for lost wages.

Davis failed to object to the trial court's restitution order at sentencing. In fact, Davis' counsel stated, in pertinent part, as follows:

Uh ..., also if the Court finds that restitution need be made by [Davis] that'll will [sic] be detrimental to [Jack] and to the insurance company by his extended period of his incarceration that those payments would be unable to be made as far as the payments to [Jack] for his lost wages. I do sympathize with him for having to have to appear here in Court several times. Judge and while the Court has pointed out that defense has found [sic] motions to Continue they were either part of the pre-trial conference, some of the trial as well. And I would also point out that the State continued on a couple of occasion[s] or the defense agreed.

BY THE COURT: No I think the State agreed to a Defense Motion on a couple of occasions. I find actually I counted wrong there were six of those Motions by the Defense.

BY MR. SMITH: Okay Mr. Siders was ill one day and I think there was

one other time and also I can't uh ..., penalize [Davis] for that. There was a Hung Jury and he had to come back another time and then ... I would just ... I'm just pointing out Judge that it wasn't all the delay by the defense wasn't by the Defendant in the beginning that a continued Pre Trial conference I don't, but that be as it may the Court has the docket sheet there uh ..., in light of all the factors that are involved here Judge. I think this is [a] unique situation that will not occur again. There needs to be a restitution made to the victim of the offense. There is a family that will be torn apart and ... and Judge I've been a victim of a burglary so I understand [Jack] and what he feels from it.

(Appellant's App. pp. 529–30).

In *Mitchell v. State*, 730 N.E.2d 197, 201 (Ind.Ct.App.2000), *trans. denied*, this court held, in pertinent part, as follows:

> "When a defendant does not properly bring an objection to the trial court's attention so that the trial court may rule upon it at the appropriate time, he is deemed to have waived that possible error." *Brown v. State*, 587 N.E.2d 693, 703 (Ind.Ct.App.1992); *see also Kellett v. State*, 716 N.E.2d 975, 980 (Ind.Ct. App.1999) (holding that defendant waived error that ledger presented by the State to support restitution order contained mathematical errors and several duplicate charges, thereby rendering the amount of restitution greater than the actual expenses incurred; defendant failed to object to its admission at the sentencing hearing).

Accordingly, Davis has waived his claim of error.

## CONCLUSION

Based on the foregoing, we conclude that Davis was properly convicted of burglary. We also conclude that Davis was properly ordered to pay Jack restitution in the amount of $1,000.00 in lost wages.

Affirmed.

MATTINGLY–MAY, J., concurs.

VAIDIK, J., concurs in result with separate opinion.

VAIDIK, Judge, concurring in result.

I concur in affirming Davis' conviction but write separately to impress upon proponents of excluded evidence their responsibility for making a proper record when the trial court neglects to do so. Indiana Evidence Rule 103(a)(2) relaxes the somewhat rigid specificity requirement of an offer to prove by merely requiring that "the substance of the evidence ... [be] apparent from the context within which the questions were asked." Although Rule 103 eases the proponent's burden, the proponent must still provide enough information to the trial court to enable it to make an informed decision as to the evidence's admissibility and to rectify any error in excluding the evidence. However, it is not enough that the proponent provides the trial court with the evidence or makes the substance of the evidence apparent from the context of the questions that were asked. The proponent must also assure that an adequate record is made for our review.

I disagree with the majority that the trial court was unable to discern the substance of Defendant's Exhibit A. The exhibit was part of the record, and the trial judge sustained an objection to it. Given the context, a reasonable inference would be that the judge saw the letter and was aware of its substance. Nonetheless, the rules of evidence require not only that the substance of the evidence be made known to the trial court, but also that the offer to

prove identify the grounds for admission and the relevance of the testimony. *See Noble,* 725 N.E.2d at 846.

The State objected to Defendant's Exhibit A on hearsay grounds. However, defense counsel could have overcome the hearsay objection by explaining that the letter was not subject to exclusion under the hearsay rule because it was not being offered for the truth of the matter asserted, but rather, for impeachment purposes. Counsel has the obligation to alert the trial judge to the issue. *Young v. Rabideau,* 821 F.2d 373, 375–76 (7th Cir.1987), *cert. denied* (positing that "[t]he offer need not be formal, nor the error precisely specified ... However, appellant needed to make the appropriate arguments to the district court ... in order to alert the trial court to the issue."). The record shows that there was a conference at the bench immediately following each of the State's objections to the exhibit; but it also reveals that the conferences were not made part of the record. Because the record fails to reveal the substance of any of the discussions that took place during the bench conferences, we are unable to determine whether defense counsel argued that the letter should be allowed to come in for impeachment purposes. While initially the burden lies with the trial court to ensure that all stages of the proceedings—including bench conferences—are recorded by the court reporter, *see* Ind.Code § 33–15–23–1 (declaring that "the judge of each ... court ... shall appoint an official reporter, whose duty it shall be, whenever required by such judge, to be promptly present in said court, and to take down ... the oral evidence given in all causes, including both questions and answers, and to note all rulings of the judge in respect to the ad-

mission and rejection of evidence and the objections and exceptions thereto...."); *Indianapolis Life Ins. Co. v. Lundquist,* 222 Ind. 359, 372–73, 53 N.E.2d 338, 343 (1944) (opining that "[o]fficial court reporters are an arm of the court, charged with the duty of preserving a record of the evidence ...."), when it is apparent that no such recording was made, it becomes the party's duty to supplement the record by verified statement so as to present this Court with a complete record with respect to the issues raised on appeal. *See* Ind. Appellate Rule 31 (providing a means. to supplement the record by verified statement when no transcript is available for part or all of the evidence); *Ford v. State,* 704 N.E.2d 457, 461 (Ind.1998), *reh'g denied.*

While Davis, as the party alleging error, had the duty to present this Court with a record that was complete with respect to the exclusion of Defendant's Exhibit A, he failed to do so. Because there is no record of the bench conferences and, therefore, we have no way of determining what transpired during them—specifically, whether Davis provided the trial court with an opportunity to understand the proposed impeachment use of the evidence and to correct any error it may have made by sustaining the State's objection to the exhibit as hearsay—I find that Davis waived the issue. Hence, I concur in result.