Daniel GREEN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 01A02–0403–CR–235.

Court of Appeals of Indiana.

July 15, 2004.

Daniel M. Grove, Special Assistant to the Public Defender of Indiana, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Stephen Tesmer, Deputy Attor-

ney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In August 2003, the State charged Daniel Green with Criminal Deviate Conduct, as a Class A felony, Criminal Confinement, as a Class B felony, and Battery, as a Class C felony. In January 2004, Green pleaded guilty to the criminal confinement charge, and the State dismissed the remaining charges. The trial court then sentenced Green to a sixteen-year term of incarceration and ordered him to pay $1,345 in restitution to the Adams County Prosecuting Attorney's ("ACPA") deferral fund. Green now appeals and presents two issues for review:

1. Whether the trial court erred when it ordered restitution.

2. Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm in part, reverse in part, and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

On August 1, 2003, Green went to the home of his girlfriend, Tami Friesendorf, and the couple consumed wine and engaged in consensual sex. Following an argument, Green confined Friesendorf in her bathroom, repeatedly struck and kicked her, and returned to the bathroom several times to continue the abuse. When Friesendorf heard the front door open and close, she escaped through the bathroom window and summoned police.

The State charged Green with criminal confinement, criminal deviate behavior, and battery. Upon his arrest, police officers conducted a forensic sexual assault examination on Green. The examination included digital photographs, fingernail swabs and scrapings, and fingerprints. In September 2003, Green filed his notice of Defense of Mental Disease or Defect alleging that he was not competent to stand trial, in part, because he had previously sustained injuries to his head and had been the victim of childhood abuse. The trial court ordered Green to be examined for competency and ultimately determined that he was competent to stand trial.

On January 5, 2004, Green entered a plea of guilty on the criminal confinement charge, and the State dismissed the remaining charges. The agreement was an "open plea," with sentencing left to the trial court's discretion. The trial court sentenced Green to sixteen years and ordered him to pay $1,345 in restitution. Specifically, at the sentencing hearing, the trial court stated in relevant part:

[T]he State had a bill from the forensic sexual assault examination on the defendant of $1,345. The Prosecuting Attorney is asking simply that a money judgment for that amount be entered in this criminal case. Is there any dispute over the dollar amount of that? OK. Then I'll simply go ahead and enter the amount of that judgment at this time.

The court's sentencing order directs Green to pay his restitution to the ACPA deferral fund. This appeal ensued.

### DISCUSSION AND DECISION

#### Issue One: Restitution Order

Green first contends that the trial court erred when it ordered him to pay restitution to the ACPA deferral fund. In particular, he asserts that the restitution order was not authorized by statute and that the facts of this case are distinguishable from cases in which this court has allowed such

restitution, namely, where the State was considered to be a "victim" under Indiana Code Section 35–50–5–3(a).[1] The State responds that the trial court properly determined that the State was a victim because the forensic examination was necessitated by Green's crimes against Friesendorf.

 Generally, an order of restitution is within the trial court's discretion, and it will be reversed only upon a finding of an abuse of that discretion. *See Davis v. State,* 772 N.E.2d 535, 540 (Ind.Ct.App. 2002), *trans. denied.* An abuse of discretion occurs when the trial court misinterprets or misapplies the law. *See Tapia v. State,* 753 N.E.2d 581, 585 (Ind.2001) (citing *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 180 (Ind.1993)). Here, the question presented is whether the State was a "victim" entitled to restitution under Indiana Code Section 35–50–5–3(a). This is a question of law that we review de novo. *See Kopas v. State,* 699 N.E.2d 1193, 1195 (Ind.Ct.App.1998) (applying de novo review where trial courts order of costs payable to Newton County Prosecuting Attorneys Council was not authorized under fee or restitution statute); *see also Merritt v. State,* 803 N.E.2d 1212, 1214 (Ind.Ct.App.2004) (stating appellate court reviews issues of law de novo).

 Initially, the State asserts that Green has waived his restitution argument because he failed to object to the restitution order at trial. In support, the State directs us to *Davis,* 772 N.E.2d at 541. In that case, a burglary victim testified at the defendant's sentencing hearing that each day he had to appear in court, he lost $200 in income. *Id.* at 540. Although there was some dispute over the exact number of

days the victim had actually appeared in court, the defendant admitted at the hearing that the victim was entitled to restitution. *Id.* at 540–41. The trial court ultimately ordered the defendant to pay $1,000 in restitution to the victim and, on appeal, the defendant argued that "the record was devoid of any evidence that [the victim] suffered an actual loss of earnings as a consequence of his attendance in court." *Id.* at 540. Under those facts, we determined that the defendant had waived review of his restitution challenge because he failed to object and, in fact, conceded that the victim was entitled to restitution. *Id.* at 541.

*Davis* is distinguishable because, again, the defendant in that case conceded that restitution was proper and the only dispute was an evidentiary dispute over the amount of restitution. Here, the dispute does not involve the amount of restitution, but whether the trial court exceeded its statutory authority when it ordered restitution. And because the trial court ordered restitution as part of Green's sentence, we treat this question like any other claim that a trial court has violated its statutory authority in imposing sentence, which amounts to fundamental error, and which may be raised for the first time on appeal. *See, e.g., Abron v. State,* 591 N.E.2d 634, 638 (Ind.Ct.App.1992) (holding trial court's failure to sentence defendant in accordance with statutory requirements constitutes fundamental error and may, therefore, be raised by either party for first time on appeal), *trans. denied.*

 Indiana Code Section 35–50–5–3(a) governs restitution and provides in relevant part:

---

1. In his brief on appeal, Green suggests that the forensic sexual assault examination at issue had been performed on Friesendorf. But our review of the record shows that the examination was performed not on the victim, but

on Green after his arrest. Regardless of Green's apparent misunderstanding, the State claims that the court's restitution order was proper because the State should be considered a victim in this case.

In addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation, or without placing the person on probation, order the person to make restitution to the victim of the crime, the victim's estate, or the family of a victim who is deceased. The court shall base its restitution order upon a consideration of:

(1) property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate);

(2) medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime;

(3) earnings lost by the victim; and

(4) funeral, burial, or cremation costs incurred by the family or estate of a homicide victim as a result of the crime.

█ Although Friesendorf had no connection to the forensic sexual assault examination performed on Green, the State asserts that the trial court was authorized to order restitution for the cost of that examination because the State was a victim under these circumstances. The State correctly points out that a State entity may be considered a victim for purposes of the restitution statute. *See Hendrickson v. State*, 690 N.E.2d 765, 768 (Ind.Ct.App. 1998). In *Hendrickson*, the trial court ordered the defendant to repay funds used by a government drug task force in a controlled drug buy involving the defendant. The defendant challenged the court's restitution order, and we held that to allow the criminal defendant to retain the money would have resulted in unjust enrichment. In particular, we observed that, "requiring Hendrickson to pay the [task force] for the buy money expended during the sting operation advances Indiana's public policy of ensuring that

victims are reimbursed and defendants are prevented from being unjustly enriched by their criminal acts." *Id.* Thus, we held that, under those facts, the State was a "victim" under Indiana Code Section 35–50–5–3(a). *See also Kingston v. State*, 479 N.E.2d 1356, 1359 (Ind.Ct.App.1985) (affirming restitution order where defendant committed leaving scene of accident and trial court ordered defendant to reimburse State for traffic signal damaged in accident).

In support of its assertion that it was a victim in this case, the State directs us to *Ault v. State*, 705 N.E.2d 1078 (Ind.Ct. App.1999). In *Ault*, the defendant injured an infant victim by violently shaking the child, and the infant required extensive medical treatment. We held, in part, that the State was entitled to restitution for Medicaid payments it had made on behalf of the victim. *Id.* at 1083.

But *Ault* is distinguishable from this case. First, the State in *Ault* effectively stood in the shoes of the victim and became a surrogate by assuming the costs of the victim's medical care and treatment. And medical and hospital costs incurred by the victim are specific costs a trial court shall consider when imposing restitution. *See* Ind.Code § 35–50–5–3(a)(2).

Here, in contrast, there is no evidence that the State expended any funds on Friesendorf's behalf. Rather, the State seeks to be reimbursed for the cost of a forensic sexual assault exam it performed on Green following his arrest. Thus, the State's reliance on *Ault* to support the restitution order in this case is misplaced.

Further, we disagree with *Ault's* broad characterization of the types of restitution to which the State is entitled. Specifically, in determining that the State was entitled to restitution for the Medicaid payments it had paid on behalf of the infant victim in

*Ault,* the panel in that case stated, "In *Hendrickson,* the State elected to spend money to obtain criminal evidence and was still deemed entitled to repayment." 705 N.E.2d at 1082. But as we have already explained, we did not hold in *Hendrickson* that the State is considered a victim entitled to restitution any time it "elects" to spend money to obtain criminal evidence. If that were the prevailing rule of law, then the State would seek restitution for any and all of its discovery costs. Rather, the restitution in *Hendrickson* was proper because to allow the defendant to retain money that the drug task force had used during a controlled drug buy involving the defendant would, in part, result in unjust enrichment. 690 N.E.2d at 768. We conclude that both *Hendrickson* and *Ault* are distinguishable from the facts here, and we reject the States assertion that it is a victim entitled to restitution under Indiana Code Section 35–50–5–3.[2]

Finally, even if the State were properly considered a "victim" under these circumstances, it is significant that Green was only convicted of criminal confinement. The State dismissed the criminal deviate conduct and battery charges in exchange for Greens guilty plea. Our review of the record shows that the forensic sexual assault examination performed on Green related to the criminal deviate conduct charge because that was the only charge that alleged contact of a sexual nature.[3]

In *Utley v. State,* 699 N.E.2d 723 (Ind. Ct.App.1998), *trans. denied,* a trial court ordered a defendant who had been convicted of leaving the scene of an accident to pay restitution in the form of funeral and burial expenses to the family of a pedestrian killed in the accident. But the defendant had been acquitted of reckless homicide, and the death was deemed accidental. Because the crime of leaving the scene had caused neither the victim's death nor the associated expenses, we reversed the restitution order. Here, the State chose not to pursue the criminal deviate conduct charge. Thus, it may not order restitution for that charge, which did not result in a conviction. *See id.* at 729.

Similarly, in *Polen v. State,* 578 N.E.2d 755, 756 (Ind.Ct.App.1991) *trans. denied,* we stated:

Polen contends the trial court erred in ordering restitution in an amount greater than the damages caused by the crimes to which she pled guilty. She maintains Ind.Code § 35–38–2–2[4] allows the court to order restitution only for crimes to which a defendant either pleads guilty or is found guilty by trial. Polen cites to *Hipskind v. State,* 519 N.E.2d 572 (Ind.Ct.App.1988) *trans. denied,* and further contends restitution should be limited to the crimes to which she pled guilty, absent any agreement to restitution or admission of damages in a greater amount. Thus, Polen asserts those portions of the trial court's restitution order covering crimes to which she did not plead guilty, of which she was not convicted, or did not agree to repay as restitution, are contrary to law. We agree.

---

**2.** Not only is the State not a victim under these circumstances, but the State has made no showing how the ACPA was a victim. Indeed, there is no evidence in the record which connects the ACPA to the forensic sexual assault examination performed on Green. In addition, there is nothing in the record to establish the actual cost of the examination.

**3.** The State Police Field Technician Report describes the offense as "sexual assault."

**4.** The current version of that statute is Indiana Code Section 35–38–2–2.3, which authorizes restitution as a condition of probation.

In sum, we conclude that the trial courts order that Green pay $1,345 to the ACPA deferral fund as restitution is improper as a matter of law. Therefore, we reverse the restitution order and remand with instructions to vacate that portion of Greens sentence.

### Issue Two: Sentence

■■ Next, Green asks us to reconsider his sentence. Under Article VII, Section 6 of the Indiana Constitution, we have the constitutional authority to review and revise sentences. *Foster v. State*, 795 N.E.2d 1078, 1092 (Ind.Ct.App.2003), *trans. denied*. However, we exercise with great restraint our responsibility to review and revise sentences, recognizing the special expertise of the trial bench in making sentencing decisions. *Id.* A sentence that is authorized by statute will not be revised unless it is inappropriate in light of the nature of the offense and the character of the offender. *Id.* (citing Ind. Appellate Rule 7(B)). When considering the appropriateness of the sentence for the crime committed, courts should initially focus on the presumptive sentence. *See id.* Trial courts may then consider deviation from the presumptive sentence based upon a balancing of those factors which must be considered pursuant to Indiana Code Section 35–38–1–7.1(a), together with any discretionary aggravating and mitigating factors found to exist. *Id.*

■■ Here, Green pleaded guilty to criminal confinement, as a Class B felony. The presumptive sentence for a Class B felony is ten years, with a six-year minimum if mitigating factors are present, and no more than ten years added for aggravating factors. *See* Ind.Code § 35–50–2–5. The trial court found Green's voluntary guilty plea and his "mental health issues" to be mitigating factors, but found those to be outweighed by several aggravating factors, including a lengthy criminal record, a high risk of committing further crimes, alcohol abuse, and difficulty in controlling anger. Regarding Green's problems with anger management, the court explained, "you seem to let go of that anger and when you lash out you don't seem to be able to stop it. It just goes until somebody has been hurt very badly. That is a very big concern." The trial court also emphasized that Green's confinement of Friesendorf lasted for a "fairly extensive period of time." The court sentenced Green to sixteen years, which is authorized by statute.

Green does not challenge any of the identified aggravating factors. Rather, Green contends that a sixteen-year sentence is excessive in light of the nature of the offense and his character. Specifically, he claims, "[i]n light of Green's traumatic childhood and mental problems—most likely exacerbated by or the direct result of his severe head injuries—the presumptive sentence of ten years would have been more appropriate." As we have stated, the trial court acknowledged Green's "mental health issues" at sentencing, and the court assigned that proffered factor some mitigating weight. But the trial court was not required to assign any weight to evidence of Green's alleged childhood abuse. *See Blanche v. State*, 690 N.E.2d 709, 715 (Ind.1998) (evidence of troubled childhood does not require trial court to find abuse as mitigating circumstance).

We conclude that the trial court did not abuse its discretion when it weighed the various aggravators and mitigators. Further, we agree with the trial court that Green confined Friesendorf for an extended period of time, during which he inflicted serious injuries on her. And Green has a lengthy criminal record, which includes convictions for violent crimes, probation and parole violations, and fleeing law en-

forcement. Based on the nature of the offense and the character of the offender, we conclude that the trial court's sentence is not inappropriate.

## CONCLUSION

We conclude that the trial court erred when it ordered Green to pay $1,345 in restitution to the ACPA, and we reverse and remand with instructions that the trial court vacate that order. We otherwise affirm Green's sentence.

Affirmed in part, reversed in part, and remanded with instructions.

KIRSCH, C.J., and RILEY, J., concur.