Mark D. BENNETT, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A05–0604–CR–220.

Court of Appeals of Indiana.

March 21, 2007.

Mark A. Bates, Appellate Division, Office of Public Defender, Crown Point, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Mark Bennett appeals the sentence he received after pleading guilty to confinement and sexual battery, both class D felonies. We affirm in part, reverse in part, and remand with instructions.

### Issues

Bennett raises two issues, which we restate as follows:

   I.    Whether the court improperly weighed the aggravators and mitigators, resulting in an inappropriate sentence; and

II. Whether the restitution order is valid.

### Facts and Procedural History

On January 14, 2005, the State charged Bennett with child molesting as a class B felony. Appellant's App. at 11. The State amended the information more than once. *Id.* at 35. Pursuant to a February 3, 2006 plea agreement, Bennett admitted he was guilty of committing confinement and sexual battery, both class D felonies. *Id.* at 37; *see also* G. Plea Tr. at 13–15. Specifically, Bennett stipulated that he was the defendant, that N.P. was the victim, and:

3. That between the dates of 1/1/1995 and 12/31/1998 at 1218 E. Cleveland Ave. Apt. B, Hobart, Lake County, Indiana, [he] resided at said address.

4. That on the above said dates and address, [Bennett] did knowingly and intentionally confine [N.P.] without consent from the victim by force or the imminent threat of force.

5. That on the above said dates and address, [Bennett] did with intent to arouse or satisfy his own personal sexual desires did touch the victim by force or the imminent threat of force.

6. That the above stated act compelled the victim to submit to the touching.

App. at 39 (stipulated factual basis). In exchange for Bennett's admissions of guilt, the State agreed to dismiss a charge of class A felony child molesting. *Id.* at 37. "The parties agree[d] that they [were] free to fully argue their respective positions as to the sentence to be imposed by the Court." *Id.*

On March 27, 2006, the court held a sentencing hearing after which it entered an order that provided as follows:

The Court considers the written presentence report and sentences [Bennett] to a term of Count II: thirty-six (36) months; and Count III: thirty (30) months. Said sentences are ordered served consecutively. The Court suspends the imposed sentence in Count II: thirty-six (36) months. The Court orders [Bennett] committed to the Department of Correction for a term of thirty (30) months. After his release from incarceration, [Bennett] is placed on probation for a term of thirty-six (36) months. As a condition of probation, [Bennett] is ordered to pay probation user's fees as assessed. As an additional condition of probation, [Bennett] is ordered to reimburse the victim and her family for any out of pocket expenses (therapy or otherwise) specifically related to this case....

SENTENCING CONSIDERATIONS:

1. The nature and circumstance of the crime committed are as follows: pursuant to the stipulated factual basis for the plea agreement.

2. Any oral or written statement made by the victim/victim representative.

MITIGATING CIRCUMSTANCES: The Court considers the following factors as mitigating circumstances or as favoring suspending the sentence and imposing probation:

1. [Bennett] has no history of delinquency or criminal activity.

2. Imprisonment of [Bennett] will result in undue hardship [to] his dependents.

3. [Bennett] has pled guilty and admitted responsibility.

AGGRAVATING CIRCUMSTANCES: The Court considers the following factors as aggravating circumstances or as favoring imposing consecutive terms of imprisonment:

1. Pursuant to the document submitted by [Bennett], specifically the psychosexual assessment of Robert Hundt, the victim was between six (6) and nine (9)

years of age at the time this offense occurred.

2. As admitted by [Bennett, he] was in a position of care and custody of the victim at the time of the offense.

The court finds that each aggravating factor, standing alone, in and of themselves, outweigh any mitigating factor. . . .

*Id.* at 41–42.

## Discussion and Decision

### I. *Aggravators, Mitigators, Appropriateness*

■ Bennett contends that because he has never had the "benefit of probation, the trial court should have placed him on probation for the entire term of his sentence." Appellant's Br. at 4, 6. Thus, he requests a remand or a reduced sentence to be served entirely on probation. In a related argument, Bennett asserts that his sentence was inappropriate given his character. For support, he focuses upon his lack of criminal history, his expressed remorse, his admission of responsibility (as demonstrated by his guilty plea, which "spar[ed] N.P. a trial"), and the hardship that incarceration would cause his family. Appellant's Br. at 6.

We begin with the observation that between the date of Bennett's offense— which the charging information alleged occurred between 1995 and 1998—and the date of sentencing, March 27, 2006, Indiana Code Section 35–50–2–6 was amended to provide for "advisory" sentences rather than "presumptive" sentences. *See* P.L. 71–2005, § 9 (eff.Apr.25, 2005). This Court has previously held that the change from presumptive to advisory sentences should not be applied retroactively. *See Weaver v. State,* 845 N.E.2d 1066 (Ind.Ct.App.2006), *trans. denied; but see Samaniego–Hernandez v. State,* 839 N.E.2d 798, 805 (Ind.Ct.App.2005).

Therefore, we operate under the earlier "presumptive" sentencing scheme when addressing Bennett's sentence.

■ In general, sentencing lies within the discretion of the trial court. *Henderson v. State,* 769 N.E.2d 172, 179 (Ind.2002). As such, we review sentencing decisions only for an abuse of discretion, "including a trial court's decision to increase or decrease the presumptive sentence because of aggravating or mitigating circumstances." *Id.* Furthermore, "[w]hen enhancing a sentence, a trial court must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reasons why each circumstance is aggravating or mitigating; and (3) evaluate and balance the mitigating against the aggravating circumstances to determine if the mitigating offset the aggravating circumstances." *Vazquez v. State,* 839 N.E.2d 1229, 1232 (Ind.Ct.App.2005) (quoting *Bailey v. State,* 763 N.E.2d 998, 1004 (Ind.2002)), *trans. denied.* A single aggravating circumstance is adequate to justify an enhanced sentence. *Moon v. State,* 823 N.E.2d 710, 717 (Ind.Ct.App.2005), *trans. denied.*

■ As the following excerpt indicates, the court was well aware of the fact that Bennett had never been on probation before:

So what are mitigating factors? There's no doubt whatsoever that a considerable mitigating factor is that [Bennett] comes into court as a 40–year–old man without any criminal convictions whatsoever. Not even a single arrest from what I can see in the presentence investigation report. It does suggest to me that [Bennett] has been able to lead a law-abiding life for all of his life. That's a big deal. Also taking into account [Bennett] pled guilty, admitted his responsibility as another mitigating factor.

To some extent, and because I have heard some evidence of it, I think that a lengthy incarceration will pose undue hardship to [Bennett's] dependants, something that I probably should not ignore, so I cite that as an additional mitigating factor. [Bennett] has never been given the benefit of probation; so therefore I need to make the leap or the presumption that [Bennett] will respond affirmatively to some type of probation. There's nothing to suggest to me that probation would necessarily be inappropriate when [Bennett] would not do well on probation.

Sent. Tr. at 47. Indeed, the court's decision to order that Bennett serve part of his sentence at the Department of Correction and part on probation demonstrates that the court accorded mitigating weight to Bennett's lack of prior probation. "Generally, the weight assigned to a mitigator is at the trial judge's discretion, and the judge is under no obligation to assign the same weight to a mitigating circumstance as the defendant." *Covington v. State,* 842 N.E.2d 345, 348 (Ind.2006). The court was within its discretion in assigning this mitigator significant though not overwhelming weight—regardless of Bennett's opinion. *See Gillem v. State,* 829 N.E.2d 598, 604–05 (Ind.Ct.App.2005) ("The trial court is not obliged to agree with the defendant as to the weight or value to be given proffered mitigating circumstances."), *trans. denied.*

Indiana Appellate Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Weiss v. State,* 848 N.E.2d 1070, 1072 (Ind.2006). The presumptive sentence for a class D felony was eighteen months, with not more than eighteen months added for aggravating circumstances. *See* Ind.Code § 35–50–2–7. According to the probable cause affidavit,

> between the ages of six (6) and nine (9) years old, [N.P.] was molested on several occasions by a friend of her father's, [Bennett]. [N.P.] further stated that some of these molestations occurred in Markham, Illinois and some at Bennett's home in Hobart, Indiana. She further stated that on occasion she would stay over at Bennett's home in Hobart with Bennett's children. She further stated that she remembers one specific occasion at Bennett's home in Hobart, Indiana in which she was asleep on the top bunk of a bunk bed when [Bennett] came into the room and picked her up and carried her into his bedroom and laid her down on the bed. She further stated that [Bennett] masturbated near her and subsequently rolled her over onto her back and straddled her and attempted to put his penis in her mouth. She further stated that she kept her mouth closed and also told him to stop and that he then lifted up her nightie and pulled down her underwear and began to lick her vagina. She further stated that when he was finished he rolled her over and covered her with blankets. She further stated that the next day [Bennett] told her that her panties had magically appeared on the floor in his bedroom.

App. at 12 (probable cause affidavit). Eventually, Bennett himself admitted that while babysitting, he licked the vagina of N.P., the young daughter of his best friend of twenty years. *Id.* at 68. However, this information emerged ten years after the fact and only when N.P. brought it to light. This reveals much about Bennett's character.

Bennett received a less-than-maximum sentence with more than half of it to be

served on probation, that is, thirty months at the Department of Correction and thirty-six months on probation. The court's detailed sentencing statement makes it clear that it considered Bennett's nonexistent criminal history, expression of remorse, guilty plea, and the hardship incarceration would cause his family. However, the court found that the age of N.P. and Bennett's violation of trust outweighed the mitigators. Given the nature of the offenses and the character of Bennett as well as the thoughtful sentencing statement, we cannot say that Bennett's sentence is inappropriate. See McCoy v. State, 856 N.E.2d 1259, 1262 (Ind.Ct.App.2006).

## II. Restitution

■ At Bennett's sentencing hearing, the court outlined its restitution order as follows:

> As a further condition of [Bennett's] probation, you are ordered to reimburse the victim and her family for any out-of-pocket expenses, therapy or otherwise, that relate to this crime that you committed upon that family, specifically upon that victim. Those expenses should be—should be provided to our probation department as they will make those expenses known to defense counsel, specifically to [Bennett] as those bills come in. And that would also include those out-of-pocket expenses that the victim's family has had to endure thus far as well. I'm not just talking about future expenses. I'm talking about prior expenses as well as reasonable fees as a condition of your probation.

Sent. Tr. at 54. Bennett makes a two-fold challenge to the portion of the sentencing order requiring him to "reimburse [N.P.] and her family for any out of pocket expenses (therapy or otherwise) specifically related to this case." App. at 41. First, he claims that the court erred by not determining the amount of restitution be-

fore ordering payment of the same. Second, he faults the court for ordering restitution for future expenses.

■ "The purpose of a restitution order is to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victims caused by the offense." Henderson v. State, 848 N.E.2d 341, 346 (Ind.Ct.App. 2006). An "order of restitution is within the trial court's discretion" and will only be reviewed for an abuse of that discretion. Roach v. State, 695 N.E.2d 934, 943 (Ind.1998). An abuse of discretion occurs if the court's decision is clearly against the logic and effects of the facts and circumstances before it. See Palmer v. State, 704 N.E.2d 124, 127 (Ind.1999); Davis v. State, 772 N.E.2d 535, 540 (Ind.Ct.App.2002), trans. denied. An abuse of discretion also occurs "when the trial court misinterprets or misapplies the law." Green v. State, 811 N.E.2d 874, 877 (Ind.Ct.App.2004) (citing Tapia v. State, 753 N.E.2d 581, 585 (Ind.2001)).

■ Indiana Code Section 35–50–5–3(a) provides that a court "may, as a condition of probation or without placing the person on probation, order the person to make restitution to the victim of the crime. . . . The court shall base its restitution order upon a consideration of: . . . (2) medical and hospital costs incurred by the victim (before the date of sentencing) as a result of the crime[.]" (Emphasis added). It is well settled that the trial court "may consider only those expenses incurred by the victim prior to the date of sentencing in formulating its restitution order." Carswell v. State, 721 N.E.2d 1255, 1259 (Ind.Ct.App.1999) (emphasis added) (citing Kotsopoulos v. State, 654 N.E.2d 44, 46 (Ind.Ct.App.1995), trans. denied); see also T.C. v. State, 839 N.E.2d 1222, 1225 (Ind. Ct.App.2005). The amount of actual loss is a factual matter that can be determined only upon the presentation of evidence.

*Shane v. State,* 769 N.E.2d 1195, 1199 (Ind.Ct.App.2002) (citing *Kellett v. State,* 716 N.E.2d 975, 980 (Ind.Ct.App.1999)).

We have reversed and remanded problematic restitution orders even when, as here, a defendant did not object at the earliest opportunity during his sentencing hearing. *See, e.g., Ware v. State,* 816 N.E.2d 1167, 1179 (Ind.Ct.App.2004). In *Ware,* a sexual misconduct with a minor case, the court ordered Ware to "pay for *any* counseling that [S.H.] receives as a result of this matter." *Id.* at 1179–80 (emphasis added). On appeal, we acknowledged that Ware's failure to object constituted waiver but then explained our rationale for remanding as follows:

> First, the restitution order *violates the restitution statute.* Second, the requirement that Ware pay for any counseling S.H. receives as a result of this crime imposes an undue financial burden on Ware, as it requires Ware to pay for S.H.'s counseling *in perpetuity.* Third, the record is *devoid of any evidence to determine the proper amount of restitution,* i.e., the cost of S.H.'s counseling up to the time of sentencing. In light of these considerations, we find that the trial court's restitution order constitutes fundamental error. Accordingly, we reverse this portion of Ware's sentence and remand with instructions to the trial court to determine the cost of any counseling S.H. received before the time of sentencing as a result of Ware's crimes. *See* I.C. 35–50–5–3(a)(2).

*Id.* (emphases added).

More recently, we reached a similar conclusion. *See Johnson v. State,* 845 N.E.2d 147, 153–54 (Ind.Ct.App.2006), *trans. denied.* In *Johnson,* the defendant pled guilty to child molesting, and on appeal argued that the trial court "erred by ordering him to pay an unspecified amount of restitution for the victim's counseling, to be paid 'if requested.'" *Id.* at 153. After

noting Johnson's failure to challenge the restitution order at his sentencing hearing, we stated: "To order a defendant to pay restitution for medical expenses incurred *after* the date of sentencing would constitute an improper sentence not sanctioned by our statute and, thus, fundamental error." *Id.* at 153–54 (emphasis added). We found that the court's sentencing order with regard to restitution was "unclear" and that we were unable "to determine whether that portion of the sentence [wa]s in keeping with the requirements of the restitution statute." *Id.* at 154. "Because we [we]re unable to determine whether the restitution provision [wa]s improper and result[ed] in fundamental error," we remanded for clarification of the restitution portion of the sentencing order. *Id.; see also Green,* 811 N.E.2d at 877 ("because the trial court ordered restitution as part of Green's sentence, we treat this question like any other claim that a trial court has violated its statutory authority in imposing sentence, which amounts to fundamental error, and which may be raised for the first time on appeal").

The State points out that Bennett did not merely fail to object to restitution at the sentencing hearing. During Bennett's sentencing, he stated, "[N.P.], I hope that you can get counseling, and *I hope I can help you by offering restitution for expenses incurred for the counseling....*" Sent. Tr. at 44 (emphasis added). Bennett's counsel stated:

> Your Honor, the victim and her family deserve an appropriate sentence along with the community. *They deserve to be reimbursed for the cost associated with [N.P.'s] counseling and therapy. [Bennett] and his family stand in a position to assist with that. They're willing to do that.* [Bennett] needs to be able to provide for his dependent children.

*Id.* at 39–40 (emphasis added). Asserting that Bennett actively invited any error by

offering to pay restitution, the State would analogize his situation to that presented in *Mitchell v. State*, 730 N.E.2d 197 (Ind.Ct. App.2000), *trans. denied.*

As part of Mitchell's sentence for rape and criminal deviate conduct, the court ordered that "if there was restitution to be made to the victim [A.G.] for counseling as a result of this, [it should be made] up to a $2,500 limit. And if it's more than that, [the State will] have to come back to court to show that there was more than that." *Mitchell*, 730 N.E.2d at 200. A panel of this court noted that this was "error in the absence of any evidence supporting such an order" and because the $2,500 figure "was not confined to actual costs incurred prior to sentencing. Indeed there was no evidence that A.G. had even sought counseling prior to sentencing, thereby incurring expenses subject to restitution." *Id.* at 200–01. Errors notwithstanding, the panel affirmed, noting that Mitchell had failed to object to the restitution order at sentencing and that his counsel had advised that he would "make restitution and he'll pay the cost of any counseling that [A.G.] has to have, if she's in counseling." *Id.* at 201. The panel stated: "Mitchell cannot invite error and then request relief on appeal based upon that ground; invited error is not reversible error.... Mitchell has waived review of this claim of error." *Id.*

For a variety of reasons, we do not find *Mitchell* controlling under the circumstances presented here. First, we have no indication that fundamental error was argued in *Mitchell*. Second, the concept that violating the restitution statute constitutes an improper sentence and therefore equals fundamental error seems to have crystallized since *Mitchell* was issued. *See, e.g., Cherry v. State*, 772 N.E.2d 433, 440 (Ind.Ct.App.2002) (noting that a restitution order is "part of the sentence," and that it is "the duty of the appellate courts to bring illegal sentences into compliance"), *trans. denied; Green*, 811 N.E.2d at 877; *Ware*, 816 N.E.2d at 1180; *Johnson*, 845 N.E.2d at 153–54. Third, Mitchell's restitution order contained a $2,500 limit, and required the State to return to court to demonstrate any losses beyond that. In contrast, Bennett's restitution order is completely open-ended, more akin to the orders in *Ware* (requiring Ware to pay for any counseling that S.H. "receives as a result of this matter") and *Johnson* (ordering Johnson to pay an unspecified amount of restitution for the victim's counseling, to be paid "if requested").

The restitution order in Bennett's case contains no set amount, specifically requires unknown future expenses, has no end date, and is not based upon any evidence. As such, the order violates Indiana Code Section 35–50–5–3(a), is an improper sentence, and constitutes fundamental error. Accordingly, we must reverse this portion of Bennett's sentence and remand with instructions to the trial court to determine the cost of any counseling N.P. received before the time of sentencing as a result of Bennett's crimes.[1]

Affirmed in part, reversed in part, and remanded with instructions.

SULLIVAN, J., and SHARPNACK, J., concur.

---

1. In reaching our conclusion, we note that the current restitution statute seems to be at odds with the stated purposes of restitution orders (to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victims caused by the offense, *see Henderson*, 848 N.E.2d at 346)—particularly in cases such as this where the victim's damages very likely will continue long after the defendant is sentenced.