**Rebecca D. LOHMILLER,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 08A02–0710–CR–873.**

Court of Appeals of Indiana.

April 22, 2008.

Florence Anne Briggs, Briggs Law Office, Flora, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Rebecca D. Lohmiller appeals her convictions and sentence for six counts of Forgery,[1] a class C felony, and twenty-one counts of Practicing Nursing without a License,[2] a class B misdemeanor. Specifically, Lohmiller argues that (1) the trial court erred by denying her pretrial motion to sever the charges; (2) the evidence presented was insufficient to sustain her convictions for forgery; (3) the trial court infringed on her right to testify by limiting her testimony regarding her previous involvement with the federal Witness Protection Program; (4) the trial court abused its discretion by not allowing a proffered expert witness to testify; (5) the trial court erred by denying the jury's request for a dictionary during deliberations and its question regarding two jury instructions; (6) her convictions violate the double jeopardy clause of the Indiana Constitution; and (7) the trial court committed fundamental error by ordering her to pay $25,000 in restitution. Finding that the trial court committed fundamental error when it ordered Lohmiller to pay restitution, but finding no other error, we affirm in part, reverse in part, and remand with instructions contained herein.

## FACTS

Lohmiller received a license to practice as a medical nurse in Georgia in 1974.

She claims that she was placed in the federal Witness Protection Program in 1979 after she identified and testified against a member of a crime family. Because the program would not provide protection to the man she planned to marry, she eventually withdrew from its protection.

Lohmiller moved to Indiana in 1985 but did not acquire an Indiana nursing license. Indiana does not have reciprocity with other states with regards to nursing licensure. Lohmiller began working at the Carroll County Health Department as a part-time nurse in 1999. In 2001, she was promoted to a full-time position as a public health nurse—a job that requires the employee to have graduated from an approved nursing program and possess a valid Indiana nursing license. In the course of her employment and duties, Lohmiller signed her name as "Rebecca Lohmiller RN, MSN" on at least twenty-seven occasions—three tobacco settlement subcontracts, one tobacco settlement grant, one grant request, eleven vaccine order forms, one immunization record, one CHIRP agreement,[3] one tuberculosis test record, and one tetanus immunization record. Lohmiller admits that she signed each of these documents and appended the professional suffix "RN, MSN" to her name. Tr. p. 313.

On August 3, 2005, the State charged Lohmiller with six counts of class C felony forgery and twenty-seven counts of class B misdemeanor practicing nursing without a license. On May 7, 2007, the State filed a motion in limine, requesting that the trial court enter a protective order that Lohmiller and her witnesses

---

1. Ind.Code § 35–43–5–2(b)(4).

2. Ind.Code § 25–23–1–27.

3. CHIRP is the acronym for the Children and Hoosiers Immunization Registry Program. Appellant's App. p. 96.

be restrained from any mention of [Lohmiller's] participating in the witness protection program or other names, dates of birth, or social security numbers that [Lohmiller] may have used without proof that [Lohmiller] actually participated in such program or legally used such identifiers. [Lohmiller's] defense seems to be based on her participating in a witness protection program, however, no documentation has ever been provided to the State to verify her participation in such a program. There are no witnesses or exhibits listed which would prove such participation. Any mention therefore of her claims would serve only to confuse the jury, detract from the true issues of the case, and waste judicial resources.

Appellant's App. p. 113. The trial court granted the State's motion.

A two-day jury trial began on May 14, 2007. At the close of the State's case, Lohmiller moved for a directed verdict on the forgery counts, which the trial court denied. Before Lohmiller testified, she made an offer to prove and the trial court ruled that she could testify that she had been involved in the Witness Protection Program and that, out of fear, she had chosen not to establish a nursing license in Indiana. However, it ruled that the remainder of her proffered testimony—the specific details regarding the reasons for her alleged involvement in the program—was irrelevant.

After retiring to deliberate, the jury sent two questions to the trial court—one asking for a dictionary and one asking the trial court to define the term "material fact" as it was used in two of the jury instructions. The trial court talked to the parties and ultimately concluded that it would be inappropriate to augment the final instructions and, thus, denied the jury's requests over Lohmiller's objection.

Lohmiller moved for a mistrial, which the trial court denied. The jury ultimately found Lohmiller guilty as charged.

On September 13, 2007, Lohmiller filed a motion to vacate her convictions, arguing that they violate principles of double jeopardy. The trial court denied her motion that same day and, after a hearing, sentenced Lohmiller to four years imprisonment, two years to be served on home detention and two years to be suspended to probation. The trial court also ordered Lohmiller to pay $25,000 in restitution to Carroll County's (the County) general fund as a condition of probation. Lohmiller now appeals.

## DISCUSSION AND DECISION

### I. Motion to Sever

Lohmiller argues that the trial court abused its discretion by denying her pretrial motion to sever the misdemeanor counts from the felony counts and to hold separate trials. Specifically, she argues that "[t]he sheer volume of the charges led to confusion ... [i]t would have promoted fairness to have the felonies tried separately from the misdemeanor charges." Appellant's Br. p. 27.

Two or more offenses may be joined for trial if they are "of the same or similar character" or if they are "based on the same conduct or on a series of acts connected together or constituted parts of a single scheme or plan." Ind.Code § 35-34-1-9(a). A defendant's motion for severance of crimes must be made before the commencement of trial, except that the motion may be made before or at the close of all the evidence during trial if based upon a ground not previously known. I.C. § 35-34-1-12(a). If a defendant's pretrial motion for severance of offenses is overruled, "the motion may be renewed on the same grounds before or at the close of all

the evidence during trial. The right to severance of offenses ... is waived by failure to renew the motion." I.C. § 35–34–1–12(b); *see also Brown v. State,* 683 N.E.2d 600, 603 (Ind.Ct.App.1997).

As the State notes, there is no evidence in the record that Lohmiller renewed her motion for severance during trial. Thus, pursuant to Indiana Code section 35–34–1–12(b), she has waived this issue for appeal.

## II. Sufficiency

Lohmiller argues that the evidence is insufficient to sustain her convictions for forgery. Specifically, she argues that the signor of the documents did not have to be a licensed nurse and there is no evidence of her intent to defraud.[4]

To convict Lohmiller of forgery, the State was required to prove beyond a reasonable doubt that she knowingly or intentionally made or uttered a written instrument in such a manner that it purports to have been made by authority of one who did not give authority. I.C. § 35–43–5–2. When addressing sufficiency of the evidence challenges, we neither reweigh the evidence nor judge the credibility of the witnesses. *McHenry v. State,* 820 N.E.2d 124, 126 (Ind.2005). We consider only the probative evidence and reasonable inferences therefrom that support the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). If there is conflicting evidence, we consider that evidence only in the light most favorable to the judgment. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *Id.* at 147.

When she testified at trial, Lohmiller admitted that she signed each of the documents in question with her name and appended the professional suffix "RN, MSN." Tr. p. 313. She admitted that she has never been licensed to practice nursing in Indiana. *Id.* at 315. Thus, because she was not licensed to practice nursing by the Indiana State Board of Nursing (the Board), Lohmiller was not authorized to "use the abbreviation of 'R.N.'" pursuant to Indiana Code 25–23–1–11.[5]

Lohmiller argues, and the State acknowledges, that she did not sign the documents on behalf of the Board and that there was no requirement for the signor to be a licensed nurse. However, Lohmiller did sign the documents in the course of her employment, which required her to be a licensed nurse. Thus, when Lohmiller appended the professional suffix "R.N." to her name and signed the documents in the course of her employment, she represented herself as possessing authority she did not have—the authority of a registered nurse.

The only remaining issue is whether Lohmiller possessed the requisite intent to defraud when she signed the documents. She directs us to her testimony that she "would have never defrauded anybody under any circumstance." Tr. p. 306. However, the evidence shows that Lohmiller received a job description for the public health nurse position, detailing that the employee must "be a graduate of an accredited school of nursing and be currently

---

**4.** Lohmiller does not challenge the sufficiency of the evidence regarding her convictions for practicing nursing without a license.

**5.** Indiana Code section 25–23–1–11(f) provides:

Any person who holds a license to practice as a registered nurse in Indiana may use

the title "Registered Nurse" and the abbreviation "R.N." No other person shall practice or advertise as or assume the title of registered nurse or use the abbreviation of "R.N." or any other words, letters, signs or figures to indicate that the person using same is a registered nurse.

licensed in the State of Indiana." Ex. 29; Tr. p. 33–34. Mary Jones, the Vital Records Clerk for the Carroll County Health Department, asked Lohmiller for a copy of her Indiana nursing license "when she got the job ... [and] at random times" throughout her employment. Tr. p. 38. Lohmiller told Jones that her license "was in the bank in the safety deposit box." *Id.* at 38. After Jones was unable to find a record of the license in the State's comprehensive records, she again asked Lohmiller for confirmation and Lohmiller provided Jones with alternate names. Finally, after providing excuses for four years, Lohmiller confessed to Jones that she was not a licensed nurse in Indiana. *Id.* at 40.

In sum, the evidence presented at trial shows Lohmiller's elaborate scheme to pass herself off as a nurse registered in Indiana. After knowingly accepting a job that required the employee to be a nurse registered in Indiana, Lohmiller lied about her qualifications for four years. While in that position, she signed at least twenty-seven documents in which she held herself out to be an Indiana-licensed nurse. This evidence is sufficient to show that Lohmiller knowingly or intentionally made or uttered a written instrument in such a manner that it purports to have been made by authority of one who did not give authority.[6]

### III. Evidence Regarding the Witness Protection Program

Lohmiller argues that the trial court abused its discretion by refusing to allow her to testify about the reasons she had been involved in the Witness Protection Program. She argues that by limiting her testimony, the trial court infringed upon her right to testify and present a theory of defense, violating various state and federal constitutional rights.

Lohmiller renewed her objection to the State's motion in limine at the close of the State's evidence and again during her testimony. At that point, out of the presence of the jury, she made an offer to prove, claiming that she had witnessed an attack committed by an organized crime member in a North Carolina emergency room in 1979 or 1980. Tr. p. 266–67. She identified and testified against the assailant. Approximately six weeks later, Lohmiller claims that she and her daughter became the victims of a retaliatory attack and, as a result, entered the Witness Protection Program. Lohmiller eventually left the program to marry her husband and move to Indiana. She wanted to present this evidence to the jury to show that "out of fear of being traced without federal protection, her nursing license was not activated in Indiana." Appellant's Br. p. 29.

The trial court ruled that Lohmiller could testify that she had been in the Witness Protection Program and that, out of fear, she had chosen not to establish a nursing license in Indiana. However, the trial court prohibited any testimony regarding the underlying reasons for Lohmiller's involvement in the program, find-

---

6. Lohmiller also appeals the trial court's denial of her motion for directed verdict after the State's presentation of evidence. For a trial court to grant a motion for directed verdict, there must be a total lack of evidence regarding an essential element of the crime or the evidence must be without conflict and susceptible only to an inference in favor of the defendant's innocence. *Proffit v. State,* 817 N.E.2d 675, 680 (Ind.Ct.App.2004). "If the evidence is sufficient to sustain a conviction on appeal, then a motion for directed verdict is properly denied." *Id.* Because we have held that the evidence was sufficient to sustain Lohmiller's convictions for forgery and she does not challenge the sufficiency of the evidence regarding the remaining convictions, the trial court properly denied her motion for directed verdict.

ing those reasons to be irrelevant. Tr. p. 273.

◼ A criminal defendant has a right to testify pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *Baxter v. State*, 522 N.E.2d 362, 368 (Ind.1988). Lohmiller directs us to *Rock v. Arkansas*, in which the United States Supreme Court addressed a defendant's right to testify and present her defense, holding that "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve. In applying its evidentiary rules a State must evaluate whether the interests served by a rule justify the limitation imposed on the defendant's constitutional right to testify." 483 U.S. 44, 55–56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). Lohmiller argues that the trial court impermissibly infringed upon her right to testify by limiting her testimony in violation of *Rock*. However, in reaching its conclusion, the Supreme Court explicitly held that "the right to present *relevant* testimony is not without limitation." *Id.* at 55, 107 S.Ct. 2704 (emphasis added). It emphasized that while exercising the right to testify, "the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* at 56, 107 S.Ct. 2704.

◼ Here, the trial court allowed Lohmiller to testify that she had been a registered nurse but, out of fear, had not registered in Indiana because she had been in the Witness Protection Program. Tr. p. 290. That evidence was relevant toward Lohmiller's theory of defense—

that her fear of detection led to her failure to register as a nurse in Indiana. Contrary to Lohmiller's assertions, her proffered testimony regarding the detailed reasons *why* she entered the program was not relevant. Put another way, the reasons Lohmiller became involved in the Witness Protection Program did not have any tendency to make the existence of a fact of consequence more or less probable than it would have been without the evidence. Because the excluded portion of her proffered testimony was irrelevant, the trial court did not violate Lohmiller's right to testify pursuant to *Rock*.

◼ Lohmiller also argues that the trial court's limitation on her testimony impermissibly infringed upon her right to testify pursuant to Article I, section 13 of the Indiana Constitution. Citing federal precedent, our Supreme Court held in *Sanchez v. State* that, when presenting a defense, the accused must comply with established rules of procedure and evidence. 749 N.E.2d 509, 521 (Ind.2001). Turning to Indiana law, it explicitly noted that "[o]ne of the rules of evidence is the requirement of relevance" and held that "[i]f the substantive law renders the evidence irrelevant ... there is no right under Article I, section 13 to present it." *Id.*

As we have already concluded, Lohmiller's proffered testimony regarding the specific reasons she became involved in the Witness Protection Program was irrelevant. Thus, pursuant to *Sanchez*, the trial court's decision to exclude that testimony during trial did not improperly infringe upon her right to testify or present a defense pursuant to the Indiana constitution.[7]

---

7. Without labeling it as such, Lohmiller asserts a duress defense. Indiana Code section 35–41–3–8 provides that it is a defense that the person who engaged in the prohibited

conduct "was compelled to do so by threat of imminent serious bodily injury to himself or another person. With respect to offenses other than felonies, it is a defense that the person

Finally, Lohmiller also argues that if her testimony had been admitted, the jury may have exercised its "power under the Indiana Constitution of jury nullification." Appellant's Br. p. 31. However, "[n]otwithstanding Article I, section 19 of the Indiana Constitution,[8] a jury has no more right to ignore the law than it has to ignore the facts in a case.'" *Holden v. State*, 788 N.E.2d 1253, 1255 (Ind.2003); *Bunting v. State*, 854 N.E.2d 921, 924 (Ind. Ct.App.2006), *trans. denied.* Thus, contrary to Lohmiller's assertion, Article I, section 19 does not provide a right for jury nullification.[9]

### IV. Proffered Expert Witness

Lohmiller hired Mary Hoeller, who holds degrees in law and nursing, "to testify on her behalf and render opinions on certain matters." Appellant's Br. p. 36. During the offer to prove, Hoeller testified that although Lohmiller was not a licensed nurse in Indiana, she should still be considered a registered nurse because her education gives her the right to use the professional suffix "R.N." The trial court ultimately ruled that Hoeller was not qualified as an expert and refused to allow her to testify.

Lohmiller argues that the trial court abused its discretion by ruling that

Hoeller was not qualified to testify as an expert. Indiana Evidence Rule 702(a) provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." It is within the trial court's sound discretion to decide whether a person qualifies as an expert witness, and we will only reverse upon a showing that the trial court abused its discretion. *Mitchell v. State*, 813 N.E.2d 422, 431 (Ind.Ct.App.2004).

During the offer to prove, Hoeller testified that she had not practiced nursing since 1982. Tr. p. 329. She testified regarding her interpretation of Lohmiller's actions in light of Indiana law. After hearing the proffered testimony, the trial court stated, "There's no way . . . that I'm going to consider her an expert on this." *Id.* at 335. We do not find that the trial court abused its discretion in reaching this conclusion.

Turning to the substance of Hoeller's proffered testimony, Evidence Rule 704(b) provides that witnesses may not testify to opinions concerning "guilt[ ] or innocence in a criminal case . . . or legal conclusions." This rule applies to expert

---

. . . was compelled to do so by force or threat of force." However, not only is there no evidence that Lohmiller was under the actual threat of imminent serious bodily injury, the statute explicitly provides that the defense does not apply to a person who "recklessly, knowingly, or intentionally placed himself in a situation in which it was foreseeable that he would be subjected to duress." Because it was Lohmiller's decision to leave the Witness Protection Program and accept a job requiring an Indiana nursing license—thereby, knowingly placing herself in the allegedly threatening situation—the duress defense is not applicable.

8. Article I, section 19 provides that "[i]n all criminal cases whatever, the jury shall have the right to determine the law and the facts."

9. In a related argument, Lohmiller contends that the trial court abused its discretion by refusing to give a tendered jury instruction on jury nullification. Appellant's Br. p. 33–35. However, while interpreting a similar argument in *Holden*, our Supreme Court held that because Article I, section 19 does not provide the right for jury nullification, the trial court properly refused to give a tendered instruction on the issue. 788 N.E.2d at 1255. Thus, the trial court properly rejected Lohmiller's tendered instruction on jury nullification.

testimony. *See Moore v. State*, 771 N.E.2d 46, 56 (Ind.2002) (applying Evidence Rule 704(b) to exclude expert testimony regarding defendant's awareness at the time of the crime). Pursuant to the offer to prove, Hoeller sought to testify that Lohmiller was allowed to use the professional suffix "R.N." because of her education and licensure in another state. This is an inadmissible legal conclusion pursuant to Evidence Rule 704.[10] Therefore, the trial court did not abuse its discretion by excluding Hoeller's testimony.

## V. Deliberations

After retiring for deliberations, the jury made two simultaneous requests—that it be given a dictionary and that the trial court define the term "material fact" as used in jury instructions 19 and 20. Lohmiller argues that the trial court abused its discretion by denying the jury's requests and by denying Lohmiller's subsequent motion for mistrial.

Jury Instruction 19 provided that "[i]ntent to defraud means to knowingly with specific intent make a false statement or conceal a material fact in a document that is used for official purposes." Appellant's App. p. 242. Jury Instruction 20 provided that "[d]efraud means a misrepresentation of a material fact, not made honestly or in good faith, or the failure to disclose a material fact necessary in order to make the statements made, not misleading." *Id.* at 243.

## A. Additional Guidance

 Generally, the manner of instructing the jury lies within the sound discretion of the trial court. *Hero v. State*, 765 N.E.2d 599, 602 (Ind.Ct.App.2002). Indiana Code section 34–36–1–6 provides that if, after the jury retires for deliberation, it "desires to be informed as to any point of law arising in the case, the jury may request the officer to conduct them into court, where the information shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties." The proper procedure is for the judge to notify the parties so that they may be present before the court communicates with the jury and be informed of the court's proposed response. *Riley v. State*, 711 N.E.2d 489, 492 (Ind.1999). When the jury question coincides with an error or legal gap in the final instructions, a response other than rereading from the body of the final instructions is permissible. *Powell v. State*, 769 N.E.2d 1128, 1133 (Ind.2002).

 Lohmiller argues that the tendered jury instructions contain a legal gap that the trial court should have addressed in response to the jury's second question. Although she has included the text of instructions 19 and 20, the text of the remaining instructions is not contained in the record. Thus, we cannot conclude whether the term "material fact" was used or defined in any of the other instructions. *See Meister v. State*, 864 N.E.2d 1137, 1140 n. 1 (Ind.Ct.App.2007) (noting that a defendant appealing a criminal conviction bears the burden of presenting a record that is complete with respect to the issues raised on appeal), *trans. denied.* This stalls our effort to conclude whether or not a legal gap existed in the instructions. Thus, we

---

10. In addition to being an inadmissible legal conclusion, the trial court also found that Hoeller's opinion was a misstatement of law:

 If you're in Indiana and you're using the word R.N. and you're using it on county board of health stationery and in writing for the county board of health, you're saying that you are licensed to practice in the state of Indiana. That would be holding yourself out, and the court doesn't believe that opinion is the law....

 Tr. p. 286–87.

conclude that the trial court did not abuse its discretion by deciding not to further instruct the jury regarding the definition of the term "material fact."

Even assuming for the sake of the argument that the instructions presented to the jury contain a legal gap, the supplemental instructions Lohmiller proffered in response to the jury's question did not define the term "material fact" and, instead, further defined the crime of fraud. Appellant's App. p. 244–46. Because Lohmiller's proffered instructions would not have cured the alleged legal gap, we conclude that the trial court did not abuse its discretion when it did not further instruct the jury.

### B. Dictionary

■ In *Anderson v. Taylor*, a deliberating jury requested a dictionary. 154 Ind.App. 217, 289 N.E.2d 781 (Ind.Ct.App. 1972). The trial court denied the request without explanation and, on appeal, we rejected the plaintiffs' argument that the trial court erred by not calling the jurors into open court to question them regarding their request. 289 N.E.2d at 786–87. In reaching our conclusion, we noted that

> [h]ad the court permitted a dictionary to have been taken into the jury room and the jury then had determined the definition of the word "wanton" the jury would have been deciding the law of the case, which they are strictly admonished against doing and this itself would have been reversible error.

*Id.* at 786.

In *Shultz v. State*, we surveyed the opinions of various jurisdictions with regard to a jury's use of a dictionary during deliber-

ations. 417 N.E.2d 1127, 1133–34 (Ind.Ct. App.1981). We agreed with the view manifested in cases requiring an appellant to show prejudice in order for a dictionary-related error to constitute reversible error. *Id.* at 1133. Applying this rule, the *Shultz* court held that the presence of a dictionary in the jury deliberation room did not raise a presumption of prejudice and did not constitute reversible error.

In light of the jury's second question requesting the trial court to define the term "material fact," it logically follows that it requested a dictionary for purposes of defining that term. Thus, considering our resolution of the trial court's response to the jury's second question, we conclude that the first question is rendered moot because Lohmiller cannot show that she was prejudiced by the trial court's decision not to provide the jury with a dictionary. Furthermore, taking into account the *Anderson* and *Shultz* decisions, we conclude that it was within the trial court's discretion to decide whether to allow the jury access to a dictionary during deliberations. Consequently, it did not abuse its discretion by denying the jury's request.[11]

### VI. Double Jeopardy

■ Lohmiller argues that her convictions for forgery and practicing nursing without a license violate the double jeopardy clause of the Indiana Constitution. Article I, section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." In *Richardson v. State*, our Supreme Court held that "two or more offenses are the 'same offense' in violation of Article I, section 14 of the Indiana Constitution if,

---

**11.** Lohmiller moved for mistrial after the trial court denied both of the jury's requests and the trial court denied her motion, which she claims was error. The premise underlying a motion for mistrial presupposes that an error of some type occurred in the first instance. *Johnson v. State*, 749 N.E.2d 1103, 1106 (Ind. 2001). Because we have not found error, we need not address Lohmiller's argument further.

with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d 32, 49 (Ind.1999) (emphases in original).

Under the actual evidence test, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Id.*

To convict Lohmiller of forgery, the State was required to prove beyond a reasonable doubt that she knowingly or intentionally made or uttered a written instrument in such a manner that it purports to have been made by authority of one who did not give authority. I.C. § 35–43–5–2. To convict Lohmiller of practicing nursing without a license, the State was required to prove beyond a reasonable doubt that she used in connection with her name, any designation tending to imply that she was a registered nurse or a licensed practical nurse while she was not licensed to practice in Indiana. I.C. § 25–23–1–27.

Lohmiller was convicted of six counts of forgery and twenty-one counts of practicing nursing without a license. She argues that these convictions violate double jeopardy principles because "the charges are joined only by [Lohmiller's] signature as 'RN/MSN.'" Appellant's Br. p. 22. While Lohmiller argues that she was given multiple punishments for the same offense, the State entered twenty-seven documents into evidence that Lohmiller had signed in the course of her employment, appending a professional suffix indicating she was a nurse. Ex. 1–27. This evidence shows that Lohmiller committed the various offenses twenty-seven different times and was punished once for each offense. While Lohmiller's signature appending the professional suffix on each document was a consistent element of all of the charges, the various crimes with which she was charged have distinct elements, which she admits. Appellant's Br. p. 21, 24. Thus, Lohmiller's convictions do not violate the double jeopardy clause of the Indiana Constitution.

### VII. Restitution

Lohmiller argues that the trial court erred by ordering her to pay $25,000 in restitution to the County as a condition of her probation. Specifically, she argues that the County was not a "victim" and that there is no evidence regarding its alleged damages.

At the sentencing hearing, the trial court ordered Lohmiller to pay restitution, noting:

> There is restitution that you are going to have to make to the General Fund of Carroll County to the Auditor you place, I believe, as I understand it a $25,000 property bond, not a cash bond, the Court will determine that that will be the damage and injury sustained by the county during the period of time that you were—it is a fair amount—it is not an exact amount, but it is a fair amount based upon your financial situation and also the fact that this would not be necessarily easy to pay back, but the Court will give you four years to pay it back.

* * *

The Court did not order every dollar back that was spent for salary or any-

thing in this case. The Court apportioned a portion of it that would have been done as far as salary and for the potential of the liability to the county that could be had. And in a sense it is not the full amount. It is not for restitution for not, for a grant, not getting a grant or you know using and taking money from a grant. It is for the county's benefit as far as being deceived by the qualification in this case.

Sent. Tr. p. 7, 14–15.

We recently summarized the law regarding a trial court's ability to order a defendant to pay restitution:

> The purpose of a restitution order is to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victims caused by the offense. An order of restitution is within the trial court's discretion and will only be reviewed for an abuse of that discretion. An abuse of discretion occurs if the court's decision is clearly against the logic and effects of the facts and circumstances before it. An abuse of discretion also occurs when the trial court misinterprets or misapplies the law.
>
> Indiana Code Section 35–50–5–3(a) provides that a court "may, as a condition of probation or without placing the person on probation, order the person to make restitution to the victim of the crime.... The court *shall* base its restitution order upon a consideration of [property damage based on the actual cost of repair; medical and hospital costs incurred by the victim as a result of the crime; the cost of medical laboratory tests to determine if the crime has caused the victim to contract a disease or other medical condition; earnings lost by the victim (before the date of sentencing) as a result of the crime; and funeral, burial, or cremation costs in-

curred by the family or estate]." (Emphasis added). It is well settled that the trial court may consider only those expenses incurred by the victim prior to the date of sentencing in formulating its restitution order. The amount of actual loss is a factual matter that can be determined *only* upon the presentation of evidence. We have reversed and remanded problematic restitution orders even when [ ] a defendant did not object at the earliest opportunity during his sentencing hearing.

*Bennett v. State,* 862 N.E.2d 1281, 1286–87 (Ind.Ct.App.2007) (citations omitted) (emphases in original).

■■■ The State argues that Lohmiller has waived appellate review of this issue because she failed to object when the trial court entered the order at the sentencing hearing. While we have previously held that a defendant who does not object when a trial court enters a restitution order waives review of the issue, *Mitchell v. State,* 730 N.E.2d 197, 201 (Ind.Ct.App. 2000), we have also reversed and remanded a problematic restitution order that a defendant failed to object to because the order constituted fundamental error, *e.g., Ware v. State,* 816 N.E.2d 1167, 1179 (Ind. Ct.App.2004).

In *Ware,* the court ordered the defendant to "pay for any counseling [the victim] receives as a result of this matter." 816 N.E.2d at 1179–80. While we acknowledged on appeal that Ware's failure to object constituted waiver, we nevertheless reversed and remanded the trial court's restitution order, concluding that the trial court had violated the restitution statute by ordering the defendant to pay for the victim's counseling in perpetuity and basing the award on a "record [that] is devoid of any evidence to determine the proper amount of restitution." *Id.* at 1180.

While addressing a defendant's challenge to the restitution order in *Green v. State*, we held that "we treat this question like any other claim that a trial court has violated its statutory authority in imposing sentence, which amounts to fundamental error, and which may be raised for the first time on appeal." 811 N.E.2d 874, 877 (Ind.Ct.App.2004). More recently, in *Bennett*, we distinguished *Mitchell* and held that a defendant had not waived his argument regarding a fundamentally erroneous restitution order even though he had offered to pay restitution at the sentencing hearing. 862 N.E.2d at 1287–88.

Although Lohmiller did not object to the trial court's restitution order at the sentencing hearing, the trend in recent caselaw shows our penchant for addressing such challenges on appeal if the trial court exceeded its statutory authority when it entered the order. In light of our ultimate conclusion that the trial court's restitution order herein constitutes fundamental error, we will address Lohmiller's argument despite her failure to object at sentencing.

 A State entity may be considered a victim for purposes of the restitution statute. *See Ault v. State*, 705 N.E.2d 1078 (Ind.Ct.App.1999) (affirming restitution order ordering defendant to reimburse State for Medicaid payments State made on behalf of the child victim); *Hendrickson v. State*, 690 N.E.2d 765, 768 (Ind.Ct.App.1998) (affirming restitution order ordering the defendant to repay funds used by a State drug task force in a controlled drug buy involving the defendant); *Kingston v. State*, 479 N.E.2d 1356, 1359 (Ind.Ct.App.1985) (affirming restitution order ordering defendant to reimburse State for traffic signal damage he caused after leaving the scene of the accident, for which he was convicted). However, the State is not a victim entitled to restitution when the State "has made no showing how [its

entity] was a victim." *Green*, 811 N.E.2d at 879.

 At the sentencing hearing, the State did not assert that the County was a victim entitled to restitution pursuant to Indiana Code section 35–50–5–3. It made no offer to prove, presented no evidence, and did not argue that Lohmiller should be required to pay the County restitution as a condition of her probation. Thus, pursuant to *Green*, it was fundamental error for the trial court to order Lohmiller to pay restitution as a condition of her probation because there is no evidence that the State raised the issue.

Moreover, the State presented no evidence regarding the County's actual damages. While it appears that the trial court sought to reimburse the County for a portion of Lohmiller's salary and for the potential liability it suffered as a result of her crimes, its award has no evidentiary basis. No evidence was presented regarding Lohmiller's salary and the trial court admitted that it fashioned its award to reimburse the County for "*potential* liability" it could have incurred as a result of non-existent lawsuits. Sent. Tr. p. 14 (emphasis added). While the trial court opined that "we are very fortunate that nothing did happen and nobody had a lawsuit against the county and I think that is well past the time to be over[,]" *id.* at 15, a restitution award is to be based on the amount of actual loss suffered by the victim. And as we have previously held, "[t]he amount of actual loss is a factual matter that can be determined *only* upon the presentation of evidence." *Bennett*, 862 N.E.2d at 1287 (emphasis in original). Thus, the trial court erred by fashioning a restitution award as a condition of Lohmiller's probation that had no evidentiary basis and was, at least in part, designed to reimburse the County for potential liability for which it incurred no damages.

In sum, the trial court committed fundamental error when it ordered Lohmiller to pay restitution as a condition of her probation because (1) the State had not argued that the County was a victim pursuant to Indiana Code section 35–50–5–3, and (2) the award was not based on evidence of actual damages. Therefore, we reverse the trial court's restitution order and remand with instructions that the trial court hold a hearing to determine the actual damages, if any, that the County suffered as a result of Lohmiller's crimes.[12]

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions that the trial court hold a hearing to determine the County's actual damages, if any.

RILEY, J., and ROBB, J., concur.

---

12. We hasten to note that if the trial court determines on remand that the County is, in fact, a victim entitled to restitution for actual damages it suffered, it is within the trial court's discretion to fashion an award that is within the scope of the evidence presented. In other words, we do not take issue with the trial court's prior attempt to fashion an award based on what it considered to be a portion of the County's actual damages, rather than the full amount.