## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 11 2020, 9:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher Taylor-Price
Taylor-Price Law, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Shuai Li,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 11, 2020

Court of Appeals Case No. 19A-CR-1441

Appeal from the
Marion Superior Court

The Honorable
James Snyder, Magistrate

Trial Court Cause No. 49G02-1805-F5-14306

**Vaidik, Judge.**

# Case Summary

[1] Shuai Li pled guilty to Class D felony failure to remit taxes held in trust for failing to collect or remit taxes to the State of Indiana from November 1, 2013, to December 31, 2013. The trial court ordered Li to pay $114,617.10 in restitution for taxes he failed to pay from November 1, 2013, to September 30, 2014. Li now appeals, arguing that a settlement agreement he reached in a different case barred the State from seeking restitution for any unpaid taxes in this case and that even if the State was not barred from seeking restitution, the trial court ordered him to pay too much restitution because it included time periods not covered by the charge to which he pled guilty. Although we find that the State was not barred from seeking restitution, we agree with Li that because he only pled guilty to failing to remit taxes from November 1, 2013, to December 31, 2013, the trial court erred by ordering him to pay the unpaid taxes after December 31, 2013. We therefore affirm in part and reverse and remand in part.

# Facts and Procedural History

[2] In 2014, Li was the president of Teppanyaki Grill Buffet 9701 Inc., which operated Teppanyaki Grill Buffet on East Washington Street in Indianapolis. On October 1, 2014, Indianapolis police officers, "in the course of conducting a criminal investigation," seized $353,126.05 from the bank accounts and safe-deposit boxes of Teppanyaki Grill Buffet, Li, and others. Ex. B. Two days later, the State of Indiana, the Consolidated City of Indianapolis/Marion

County, and the Metropolitan Law Enforcement Agency (collectively, "the Plaintiffs") filed a civil-forfeiture action against Teppanyaki Grill Buffet, Li, and others seeking a judgment for the seized money. Count I alleged that the money was subject to forfeiture under the corrupt-business-influence statute because it was "furnished or was intended to be furnished in exchange for a violation of a criminal statute, or is traceable as proceeds of a violation of a criminal statute." *Id.* Count II alleged that the money was subject to forfeiture because Teppanyaki Grill Buffet, Li, and others operated a corrupt enterprise— human trafficking—through a pattern of racketeering activity.

[3]     In December 2014, Li entered into a settlement agreement with the Plaintiffs for the dismissal of the civil-forfeiture action against him. The settlement agreement includes several terms, the first of which provides:

> On or about October 1, 2014, police officers employed by the Plaintiffs[] lawfully seized from [Li] the various sums of U.S. currency found in the Bank Accounts and Safety Deposit Boxes identified in the above caption of this cause of action.

Appellant's App. Vol. II p. 140. According to another term, the Plaintiffs released Li and his interest in Teppanyaki Grill Buffett "from any and all manner of past, present, or future liabilities, debts, judgments, demands, costs and expenses (including attorney's fees and costs) of every nature, kind and description whatsoever under the current cause of action **relating to the seizure of his property**." *Id.* at 142 (emphasis added).

[4]     In addition, the parties agreed that "the total sum of the U.S. Currency seized as it relate[d]" to Li's interest in the matter totaled $316,908.19 and that $150,000 of that would be returned to Li "for the express purpose of paying debt incurred by the business Teppanyaki Grill Buffet 9701, Inc., and/or re-startup costs associated with re-opening the business." *Id.* at 143. Also, the parties agreed that "the remaining sum of U.S. Currency, which equates to $166,809.19, [would] be retained by the Plaintiffs for the costs of law enforcement." *Id.* at 144. Specifically, 70%, or $116,042.43, would be paid to the "IMPD portion of the City of Indianapolis Law Enforcement Fund" and 30%, or $50,042.76, would be paid to the "MCPO portion of the City of Indianapolis-Law Enforcement Fund." *Id.* The settlement agreement was filed with the trial court in February 2015, and the court approved it.

[5]     Over three years later, in May 2018, the State charged Li with five offenses: Count I: Level 5 felony corrupt business influence; Count II: Class D felony theft (exerted unauthorized control over the property, to wit: United States currency, of the Indiana Department of Revenue and/or the State of Indiana between November 1, 2013, and December 31, 2013); Count III: Class D felony theft (exerted unauthorized control over the property, to wit: United States currency, of the Indiana Department of Revenue and/or the State of Indiana between January 1, 2014, and June 30, 2014); Count IV: Class D felony failure to remit taxes held in trust (failed to collect or remit state gross retail or use taxes to the State of Indiana between November 1, 2013, and December 31, 2013); and Count V: Class D felony failure to remit taxes held in trust (failed to

collect or remit state gross retail or use taxes to the State of Indiana between January 1, 2014, and June 30, 2014). In May 2019, Li and the State entered into a plea agreement under which Li pled guilty to Count IV, the State dismissed the remaining charges, and Li was sentenced to 18 months (all suspended) and probation as follows:

> B. Probation shall be non-reporting, so long as, the defendant makes court ordered monthly restitution payments. If the court orders restitution with monthly payments and the defendant misses a monthly payment, then probation shall become standard probation for the remainder of the sentence.
>
> C. Restitution is open and shall be determined at a restitution hearing.
>
> D. Defendant shall receive AMS [alternate misdemeanor sentencing] when defendant completes all monthly restitution payments.
>
> E. Probation shall terminate early and the defendant shall receive AMS when restitution is paid in full.

*Id.* at 89.

[6] At the restitution hearing, an investigator with the Marion County Prosecutor's Office (who used to work at the Department of Revenue) testified that according to the business records that were seized from Teppanyaki Grill Buffett on October 1, 2014, Teppanyaki Grill Buffett underreported cash sales for purposes of sales tax and food and beverage tax to the Department of Revenue. As a result of this underreporting, the investigator testified that

Teppanyaki Grill owed $114,617.10 for sales tax and food and beverage tax from November 1, 2013 to September 30, 2014. Accordingly, the State asked the court to order Li to pay $114,617.10 in restitution. Defense counsel argued that the court couldn't order "any restitution" because the settlement agreement in the civil-forfeiture case "cover[ed] essentially any and all monetary obligation owed to the State of Indiana." Tr. p. 20. After taking the issue under advisement, the court granted the State's request and ordered Li to pay $114,617.10 in restitution.

[7] Li now appeals.

# Discussion and Decision

[8] Li raises two issues on appeal. First, he contends that the settlement agreement in the civil-forfeiture case barred the State from seeking restitution in the criminal case for any unpaid taxes. Li relies on the following provision in the settlement agreement: the Plaintiffs release Li and his interest in Teppanyaki Grill Buffett from all claims "under the current cause of action **relating to the seizure of his property**." Appellant's App. p. 142 (emphases added). He argues that any unpaid taxes "relat[e] to the seizure of his property" because his business records (which were used to determine that he owed taxes) were also seized on October 1, 2014:

> The property seized were the funds taken by IMPD on October 1, 2014 **along with the business records used by the State at the restitution hearing**. Thus, the State contracted away its ability

to recover any liability Li may have had relating to such seized property—including any unpaid taxes.

Appellant's Br. p. 15 (emphasis added).

[9] The problem with Li's argument is that the only seizure mentioned in the settlement agreement is the seizure of "the various sums of U.S. currency found in the Bank Accounts and Safety Deposit Boxes identified in the above caption of this cause of action." Appellant's App. Vol. II p. 140. In other words, the settlement agreement makes clear from the start that the Plaintiffs were releasing Li from all claims relating to the seizure of the money, not the business records. As the State argues on appeal, Li's failure to pay sales tax and food and beverage tax was not "in any way related to the seizure" of the money in the bank accounts and safe-deposit boxes. Appellee's Br. p. 11. Accordingly, we conclude that the settlement agreement did not bar the State from seeking restitution for any unpaid taxes.

[10] Li next contends that even if the settlement agreement did not bar the State from seeking restitution, the State could only seek restitution for the unpaid taxes from November 1, 2013, to December 31, 2013—$22,506.19, not $114,617.10—because that is the time period covered by the charge to which he pled guilty. We agree with Li on this point.

[11] The State acknowledges that the case law provides that trial courts "cannot order a defendant to pay restitution for crimes to which he did not plead guilty, has not been convicted, or did not agree to pay as restitution." *Linville v. State*,

120 N.E.3d 648, 660 (Ind. Ct. App. 2019) (quotation omitted). And the State concedes that Li did not agree to pay restitution for the counts to which he did not plead guilty.[1] Accordingly, we reverse the trial court's restitution order and remand this case with instructions for the court to reduce the amount of restitution to $22,506.19, which is the amount of unpaid taxes from November 1, 2013, to December 31, 2013.

[12] Affirmed in part and reversed and remanded in part.

Najam, J., and Tavitas, J., concur.

---

[1] The State does argue that Li waived this issue for failing to make this argument in the trial court. In support, it cites *Morris v. State*, which provides that "[g]enerally, failure to object to an award of restitution constitutes waiver of a challenge to the award on appeal, unless a defendant argues that the award was fundamentally erroneous and in excess of statutory authority." 2 N.E.3d 7, 9 (Ind. Ct. App. 2013). Here, however, Li argues that the award was in excess of statutory authority, as it included amounts to which he did not plead guilty. *See* Appellant's Br. p. 21 (citing Ind. Code § 35-50-5-3). And the State does not dispute that the trial court erred by including these amounts. Accordingly, we address this issue on appeal. *See Lohmiller v. State*, 884 N.E.2d 903, 916 (Ind. Ct. App. 2008) ("[T]he trend in recent caselaw shows our penchant for addressing such challenges on appeal if the trial court exceeded its statutory authority when it entered the order.").