**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MATTHEW D. ANGLEMEYER**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana



FILED
Dec 07 2012, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

VICKIE JESSIE,                    )
                                  )
    Appellant-Defendant,          )
                                  )
        vs.                   )     No. 49A02-1205-CR-413
                                  )
STATE OF INDIANA,                 )
                                  )
    Appellee-Plaintiff.           )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
Cause No. 49G03-1111-FA-79065

December 7, 2012

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Vickie Jessie appeals her conviction for criminal deviate conduct, as a Class A felony, and the trial court's order that she pay $200 restitution to her victim.[1] Jessie raises three issues for our review, which we restate as follows:

1.      Whether the trial court committed fundamental error when it permitted the State to make multiple references to a "rape kit" or "sexual assault kit."

2.      Whether the State presented sufficient evidence to support Jessie's conviction.

3.      Whether the trial court abused its discretion when it ordered Jessie to pay $200 in restitution to her victim.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

On November 4, 2011, Gary Johnson called J.B., his former girlfriend, and asked her if she wanted to "hang out" with him and his current girlfriend, Jessie. Transcript at 22. J.B. agreed, and Johnson and Jessie arrived at J.B.'s house shortly thereafter to pick her up and take her to Johnson's house.

At Johnson's house, the three had several drinks together over the course of about four hours. Around 3:30 a.m., Johnson asked J.B. and Jessie if they wanted to have a threesome. J.B. declined, but Jessie expressed interest. Johnson then punched J.B. in the face and knocked her out. When J.B. awoke, she noticed blood in her eyes and saw Johnson and Jessie standing over her while hitting her. J.B. lost consciousness a second time, and when she awoke again both Johnson and Jessie were undressing her.

---

[1] Jessie does not appeal her other convictions or her sentence.

J.B. then realized she was naked and face down on the bed. During the course of the assault, Johnson inserted his penis into J.B.'s anus. At various times, Jessie would force J.B. to perform sexual acts on Johnson, receive sexual acts from J.B. while Johnson pointed a gun at J.B., or stand nearby while Johnson raped J.B. and told Johnson to "give it" to the "whore." Id. at 52.

After the attack, Jessie emptied J.B.'s purse onto the bedroom floor, took J.B.'s ATM card, and, while holding a carpet cutter to J.B.'s chest, demanded J.B.'s personal identification number. J.B. complied, and Jessie took J.B. to a nearby gas station with an ATM. Inside the station, Jessie removed $200 from J.B.'s bank account. While she was doing so, J.B. told the cashier that she had been raped, and J.B. then called 9-1-1 on the cashier's personal phone. Jessie fled before the police arrived.

On November 10, the State charged Jessie with criminal deviate conduct, as a Class A felony, along with several other charges. At the ensuing jury trial, the State introduced, without objection, testimony from forensic investigators and evidence technicians. Those witnesses repeatedly referred to the use of a "rape kit" or a "sexual assault kit."[2] E.g., id. at 246-47, 330-32.

At the conclusion of the trial, the jury found Jessie guilty of, among other counts, criminal deviate conduct, as a Class A felony, and robbery, as a Class B felony. Accordingly, the trial court entered its judgment of conviction and sentence, and it ordered Jessie to pay $200 to J.B. in restitution. This appeal ensued.

---

[2] A rape kit, or sexual assault kit, is a collection of physical evidence from the victim of an alleged sexual assault taken by hospital staff.

3

## DISCUSSION AND DECISION

### Issue One:  Fundamental Error

Jessie first argues on appeal that the description by the State's witnesses of a "rape kit" or a "sexual assault kit" was fundamental error.  As our supreme court has explained:

> A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred.  See, e.g., Trice v. State, 766 N.E.2d 1180, 1182 (Ind. 2002); Hayworth v. State, 904 N.E.2d 684, 694 (Ind. Ct. App. 2009).  The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006).  The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process."  Clark v. State, 915 N.E.2d 126, 131 (Ind. 2009).  This exception is available only in "egregious circumstances."  Brown v. State, 799 N.E.2d 1064, 1068 (Ind. 2003).
>
> This doctrine has been applied, for example, to review a conviction without proof of an element of the crime despite the lack of objection. Smith v. State, 459 N.E.2d 355, 357 (Ind. 1984). . . .

Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010).

Jessie's argument on this issue is that the use of the term "rape kit" or "sexual assault kit" "invaded the province of the jury" and amounted to opinions on the ultimate issue, contrary to Indiana Evidence Rule 704(b).  Appellant's Br. at 8.  We cannot agree that any error in the State's admission of this evidence amounted to fundamental error. The descriptive terms of the collection kits only suggest that J.B. had alleged to the hospital staff who collected the evidence that she was the victim of a rape or sexual assault.  The jury was well aware of J.B.'s allegation regardless of the name of the collection kits.  Nothing in this issue is "a blatant violation of basic principles," or shows

4

that "the harm or potential for harm is substantial." Brown, 929 N.E.2d at 207. As such, this issue is without merit.

## Issue Two: Sufficient Evidence

Jessie next argues that the State failed to present sufficient evidence to support its allegation that she committed criminal deviate conduct, as a Class A felony. Specifically, Jessie asserts that the State failed to show that she was Johnson's accomplice when Johnson sodomized J.B. Rather, Jessie continues, the State's evidence showed that she "was merely present during the anal sex and failed to oppose it." Appellant's Br. at 15. We disagree.

To demonstrate that Jessie acted as Johnson's accomplice, the State was required to show that Jessie "knowingly or intentionally aid[ed], induce[d], or cause[d]" Johnson to commit criminal deviate conduct, as a Class A felony.[3] Ind. Code § 35-41-2-4.

> [T]he accessory statute has been construed to impose a form of vicarious liability for everything . . . which follows incidentally in the execution of the common design, as one of its natural and probable consequences, even though it was not intended as part of the original design or common plan, upon a showing that the accomplice acted in concert with those who physically committed the elements of the crime.

Chappell v. State, 966 N.E.2d 124, 130 (Ind. Ct. App. 2012) (emphasis added; citations and quotations omitted), trans. denied.

The State's evidence that Jessie aided Johnson during his commission of the offense was overwhelming. The State demonstrated that Jessie and Johnson designed to sexually assault J.B., with Jessie helping Johnson to beat J.B. while she went in and out of consciousness, helping him remove J.B.'s clothing, actively participating in the sexual

---

[3] Jessie does not dispute that the State presented sufficient evidence to show that Johnson committed criminal deviate conduct, as a Class A felony.

5

assault herself, and vocally encouraging Johnson throughout the ordeal. Johnson's criminal deviate conduct was more than incidental to the execution of that common design, and, therefore, Jessie is liable as an accomplice. See id. Jessie's argument to the contrary is without merit.

### Issue Three: Restitution

Finally, Jessie complains about the trial court's $200 restitution order. "'The purpose of a restitution order is to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victims caused by the offense.'" Bennett v. State, 862 N.E.2d 1281, 1286 (quoting Henderson v. State, 848 N.E.2d 341, 346 (Ind. Ct. App. 2006)). It is within the trial court's discretion to order restitution, and we will reverse only for an abuse of that discretion. Id. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or if the trial court misinterprets or misapplies the law. Id.

Jessie has invited any error on this issue and, as such, she cannot request relief based on this ground on appeal. See Mitchell v. State, 730 N.E.2d 197, 201 (Ind. Ct. App. 2000), trans. denied. During her sentencing hearing, in arguing mitigating circumstances Jessie's counsel expressly informed the court that "Jessie is certainly willing to make restitution" to J.B. Transcript at 556. The court then ordered her to pay J.B. $200, but the court added that, "if there is an additional request for restitution, the Court will advise [Jessie] and her counsel. And if you wish to have a hearing, we'll set the matter for a hearing." Id. at 576. Thus, the court's restitution order was based on Jessie's invitation to pay restitution as a mitigating circumstance. Having invited the

6

restitution order, Jessie cannot request relief from it on appeal. See Mitchell, 730 N.E.2d at 201. Invited error is not reversible error. Id.

**Conclusion**

In sum, we affirm Jessie's conviction for criminal deviate conduct, as a Class A felony, and the trial court's restitution order. Jessie cannot show that the State's references to the "rape kit" or "sexual assault kit" were fundamental error, and the State presented sufficient evidence to show that Jessie was Johnson's accomplice during Johnson's commission of the criminal deviate conduct. Further, any error in the trial court's restitution order was invited by Jessie when she offered to pay restitution as a mitigating circumstance.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.