## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 17 2017, 8:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frederick Vaiana
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Garit Tuggle,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 17, 2017

Court of Appeals Case No.
33A01-1608-CR-1884

Appeal from the Henry Circuit Court

The Honorable Kit C. Dean Crane, Judge

Trial Court Cause No.
33C02-1509-F3-8

**Crone, Judge.**

# Case Summary

[1] Garit Tuggle appeals his twelve-year aggregate sentence for level 3 felony aggravated battery and level 6 felony criminal recklessness. He argues that the trial court abused its discretion in including one of the victim's lost wages in its restitution order. He also contends that the trial court abused its discretion in sentencing him and that his sentence is inappropriate in light of the nature of his offenses and his character. We find no abuse of discretion in the restitution order or in sentencing. We also conclude that Tuggle has failed to carry his burden to show that his sentence is inappropriate. Therefore, we affirm

# Facts and Procedural History

[2] One evening in September 2015, Tuggle had guests at his home, including his cousin Chandler Roberts, Vanessa Goebel, and Brittany Gosser. Tuggle was extremely intoxicated and got into a physical altercation with Roberts. Tuggle swung at Roberts and grabbed him by the throat. Roberts picked Tuggle up and "slammed him." Tr. at 66. Roberts and Goebel decided to leave. While Roberts was sitting in Goebel's car, Tuggle was rummaging around inside his own car. Goebel heard Tuggle say something about retrieving his gun and shooting it. She decided to walk away, but she heard shots. Roberts also heard a "pop, pop, pop." *Id*. at 68. Tuggle fired at least six shots from his handgun. One of the bullets hit Gosser just below her right knee, shattering her fibula.

[3] After firing a few shots, Tuggle walked over to Goebel's car. Roberts got out of the car and looked Tuggle straight in the eye. Tuggle pointed his gun at Roberts's head and then shot him in the left leg just inches from the femoral artery, breaking his femur. Roberts was in the hospital two days and required surgery to place a metal rod in his leg, but doctors were unable to remove all the bullet fragments. Gosser also spent two days in the hospital, where doctors removed some of the bullet fragments from her leg, but at least twenty bullet and bone fragments remain. Gosser had to be fitted with a custom leg brace that she cannot walk without. The bullet hit her peroneal nerve, causing extensive nerve damage and loss of the use of her right foot. Gosser may undergo additional surgery, although it will not provide full use of her foot. She was unable to work for five to six months.[1] *Id.* at 48. At the time of sentencing, she was still experiencing pain.

[4] The State charged Tuggle with one count of level 3 felony aggravated battery against Roberts, one count of level 3 felony aggravated battery against Gosser, and one count of level 6 felony criminal recklessness against Roberts.[2] Appellant's App. at 4, 151-52. Pursuant to a plea agreement, Tuggle agreed to plead guilty to level 3 felony aggravated battery against Roberts and level 6 felony criminal recklessness against Gosser. The State agreed to dismiss the

---

[1] The State incorrectly claims that Gosser was unable to work for five to six weeks. Appellee's Br. at 9.

[2] Tuggle and the State both incorrectly maintain that Tuggle was charged with one count of aggravated battery and two counts of criminal recklessness. Appellant's Br. at 4; Appellee's Br. at 5.

third count. The plea agreement capped Tuggle's sentence at twelve years but otherwise left sentencing open to the trial court's discretion.

[5]     At the plea hearing, Gosser testified that she had moved to Indiana four days before the shooting. Prior to moving to Indiana, she had worked for Mentor Network for six years and expected to continue to work for them in Indiana, although she had not yet contacted them at the time of the shooting. Tr. at 54-55. Specifically, Gosser testified, "I transferred my job out of state. I was able to transfer back but I hadn't technically started yet." *Id*. at 52. During her testimony, the State introduced Exhibit 1, a spreadsheet supplementing Gosser's testimony regarding her claim of restitution against Tuggle. Gosser claimed restitution of $16,748.52, including $8320.00 in lost wages. *Id*. at 50-54, 60-62; Ex. Vol. at 8. Gosser's claim for lost wages was based on her hourly wage at Mentor Network and the average number of hours per week she had been working before moving to Indiana. When Gosser was asked about how her calculations would have differed if she was not offered a job with her former employer, she responded, "That's just not a possibility." Tr. at 55.

[6]     The trial court accepted Tuggle's plea, and the parties presented argument regarding sentencing. Having read the presentence investigation report and the letters written on behalf of Tuggle, and having heard Tuggle's testimony and the parties' arguments, the trial court found that Tuggle's remorse was a mitigating factor. However, the trial court noted that Tuggle's criminal history reflected a pattern of abusing alcohol, marijuana, and other substances and found it to be an aggravating factor. The trial court also found that the nature

and circumstances of the level 6 felony criminal recklessness count were more significant than the offense's required elements and therefore constituted an aggravating factor as to that count. The trial court sentenced Tuggle to consecutive terms of ten years on the aggravated battery conviction, with three years suspended, and two years on the criminal recklessness conviction, with one year suspended for an aggregate sentence of twelve years with four years suspended. The trial court also ordered Tuggle to pay Gosser restitution of $16,748.52, including lost wages. The trial court dismissed the remaining charge. This appeal ensued.

## Discussion and Decision

### Section 1 – The trial court did not abuse its discretion in ordering restitution for Gosser's lost wages.

[7] Tuggle challenges the trial court's decision to order restitution for Gosser's lost wages.[3] Pursuant to Indiana Code Section 35-50-5-3(a)(4), the trial court has the authority to order a person convicted of a felony or misdemeanor to make restitution to the victim of the crime based upon a consideration of "earnings lost by the victim (before the date of sentencing) as a result of the crime including earnings lost while the victim was hospitalized or participating in the investigation or trial of the crime[.]" An order of restitution lies within the trial court's sound discretion and will be reversed only for an abuse of discretion.

---

[3] The State asserts that Tuggle waived this claim, but we disagree. At the hearing, Tuggle's counsel argued that Gosser's claim for lost wages was speculative and would not be awardable under the restitution statute. Tr. at 118.

*Kays v. State*, 963 N.E.2d 507, 509 (Ind. 2012). In determining whether the trial court abused its discretion, we neither reweigh evidence nor judge witness credibility. *Mogg v. State*, 918 N.E.2d 750, 755 (Ind. Ct. App. 2009). "A restitution order must be supported by sufficient evidence of actual loss sustained by the victim or victims of a crime." *Rich v. State*, 890 N.E.2d 44, 49 (Ind. Ct. App. 2008), *trans. denied*. "The amount of actual loss is a factual matter that can be determined only upon the presentation of evidence." *Bennett v. State*, 862 N.E.2d 1281, 1286 (Ind. Ct. App. 2007). We will affirm the trial court's restitution order if there is any evidence supporting it. *Smith v. State*, 990 N.E.2d 517, 520 (Ind. Ct. App. 2013), *trans. denied*.

[8] Specifically, Tuggle asserts that Gosser's request for $8320 in lost wages does not represent any actual loss she sustained because at the time of the shooting she was unemployed and did not have an actual offer of employment. The evidence shows that Gosser worked for Mentor Network for six years and transferred her employment to Indiana, and that she was unemployed because she had been in Indiana only four days and had not yet contacted Mentor Network. The evidence also shows that she had been working an average of thirty-two hours per week and earned $10.00 per hour and that she had been unable to work for twenty-six weeks due to the injury caused by Tuggle's shooting.[4] Tuggle's argument is merely an invitation to reweigh the evidence, which we must decline. We conclude that the restitution order for lost wages is

---

[4] $10 \times 32$ hours $\times 26$ weeks $= \$8320.00$.

supported by sufficient evidence of actual loss. Accordingly, the trial court did not abuse its discretion in ordering restitution for Gosser's lost wages.

## Section 2 – The trial court did not abuse its discretion in sentencing Tuggle.

[9] Tuggle argues that the trial court abused its discretion when it sentenced him. Sentencing decisions are within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs when the trial court's decision is contrary to "the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom." *Williams v. State*, 997 N.E.2d 1154, 1163 (Ind. Ct. App. 2013). A trial court abuses its discretion by entering a sentencing statement that omits mitigating factors that are clearly supported by the record and advanced for consideration. *Anglemyer*, 868 N.E.2d at 490-91. Although an appellate court may review the trial court's reasons and omissions of reasons for imposing sentence, the relative weight assigned by the trial court to aggravating and mitigating factors is not subject to appellate review. *Id*. at 491.

[10] Tuggle contends that the trial court abused its discretion by failing to find various mitigating factors. He notes that "[t]he trial court refused to consider [his] criminal history as a mitigator, instead finding it an aggravating circumstance." Appellant's Br. at 12. That is not an uncommon occurrence in most sentencing hearings. He also argues that the trial court ignored that he obtained a job earning $52,000 a year, was only three or four classes away from

obtaining a degree at Ivy Tech, and did not violate the conditions of his pretrial home detention which included screens for the presence of alcohol. We observe that the trial court is not obligated to accept the defendant's arguments as to what constitutes a mitigating factor and is not required to give the same weight to proffered mitigating factors as the defendant does. *Healy v. State*, 969 N.E.2d 607, 616 (Ind. Ct. App. 2012), *trans. denied*. A trial court does not abuse its discretion by failing to identify a mitigating factor unless the mitigating evidence is both significant and clearly supported by the record. *Id.*

[11] At sentencing, Tuggle argued that his crimes were connected to his alcohol use and therefore were the result of circumstances unlikely to recur and that he was at low risk to reoffend because he had a limited criminal history, had obtained a job, was close to getting a degree from Ivy Tech, had participated in substance abuse treatment while on home detention, and had not committed any probation violations while on home detention during which he was tested for alcohol four times a day. Tuggle also argued that he had demonstrated remorse for his crimes.

[12] The trial court was unpersuaded that Tuggle's crime was the result of circumstances unlikely to recur and that Tuggle was unlikely to reoffend because the court believed that Tuggle's criminal history and the presentence investigation report showed a pattern of substance abuse and offenses related to his substance abuse. Tr. at 138-39. Tuggle's criminal history includes a 2012 misdemeanor conviction for possession of marijuana and two 2013 misdemeanor convictions for possession of marijuana and possession of

paraphernalia. In April 2016, Tuggle violated the conditions of his pretrial release and was charged with operating a vehicle while intoxicated.[5] Thus, the trial court considered Tuggle's proffered mitigators and, other than his remorse, rejected them. We find no abuse of discretion.

## Section 3 – Tuggle has failed to carry his burden to show that his sentence is inappropriate.

[13] Tuggle argues that his aggregate sentence of twelve years with eight years executed is inappropriate pursuant to Indiana Appellate Rule 7(B), which states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In conducting our review, "[w]e do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Tuggle has the burden to show that his

---

[5] Tuggle was convicted and sentenced in that case contemporaneously with this one.

sentence is inappropriate. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

[14] When considering the nature of the offenses, we observe that "the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011). The advisory sentence for a level 3 felony is nine years, with a sentencing range of three to sixteen years. Ind. Code § 35-50-2-5(b). The advisory sentence for a level 6 felony is one year, with a sentencing range of six months to two and one-half years. Ind. Code § 35-50-2-7(b). Tuggle received an aggregate sentence of twelve years, with eight years executed and four years suspended.

[15] Tuggle does not deny that he committed serious crimes and does not argue that the nature of the offenses renders his sentence inappropriate. Rather, he argues that his character warrants a revision of his executed sentence to home detention and/or probation. In so arguing, he again relies on his gainful employment, pursuit of a college degree, and substance abuse treatment to demonstrate his positive character. We recognize that these undertakings are reflective of Tuggle's capacity to become a productive, law-abiding citizen. However, when considering the nature of Tuggle's offenses as well as his character, we are unpersuaded that Tuggle's sentence is inappropriate.

[16] Tuggle became extremely intoxicated, grabbed his handgun, and shot it six times with multiple people in the area. All those people were put at risk by Tuggle's conduct. One shot struck Gosser, who required significant medical

care and was unable to work for five or six months. She suffered permanent nerve damage subjecting her to the possibility of lifelong pain and loss of the use of her foot. Tuggle pointed his gun at Roberts's head, putting Roberts at great risk of death. Tuggle then shot Robert's leg, breaking his femur. Robert required surgery to place a metal rod in his leg and still has bullet fragments in his leg. We conclude that Tuggle has failed to carry his burden to show that his sentence is inappropriate based on the nature of the offenses and his character.

[17]     Affirmed.

Riley, J., and Altice, J., concur.